

# COURT OF APPEALS
## SECOND DISTRICT OF TEXAS
## FORT WORTH

### NO. 02-08-00382-CR

GEORGE GAAL                                                          APPELLANT

V.

THE STATE OF TEXAS                                                          STATE

----------

FROM THE 367TH DISTRICT COURT OF DENTON COUNTY

----------

## MEMORANDUM OPINION ON REMAND[1]

----------

Appellant George Gaal appeals his felony conviction for driving while intoxicated (DWI).[2] In our prior opinion in this case, we sustained appellant's fourth point, in which he argued that the trial judge should have been recused. *See Gaal v. State*, No. 02-08-00382-CR, 2010 WL 323574, at *4 (Tex. App.—

---

[1]*See* Tex. R. App. P. 47.4.

[2]*See* Tex. Penal Code Ann. §§ 49.04(a), .09(b)(2) (West 2011).

Fort Worth Jan. 28, 2010) (not designated for publication), *rev'd*, 332 S.W.3d 448 (Tex. Crim. App. 2011). However, the court of criminal appeals reversed our decision and remanded the case so that we may consider appellant's remaining points that we did not address in our original opinion. *Gaal*, 332 S.W.3d at 460. For the reasons stated below, we overrule those points and affirm the trial court's judgment.

## Background Facts

Near midnight on September 23, 2007, Gayle Cook was riding in a pickup with her husband on Milam Road toward Interstate 35 when she spotted a truck stopped in the middle of the road and saw appellant on the ground in front of the truck. It appeared to Cook that appellant's truck had hit a guardrail and was damaged. Cook approached appellant to ask him if he was okay, but appellant was disoriented and did not appropriately answer Cook's questions. Cook and her husband went to a nearby truck stop and called 911 on her cellular phone, but while they were doing so, appellant began to drive away.

Cook and her husband followed appellant, who was driving slowly and swerving. Appellant eventually drove into a ditch, but then he drove back onto the road very quickly before he pulled into a parking lot and stopped his truck. Cook had continued her contact with 911, and a Denton police officer eventually arrived at the parking lot and approached appellant's truck. The officer noticed that appellant had slurred speech, that he smelled like alcohol, and that he had bloodshot eyes. Another Denton police officer arrived at the parking lot and

2

asked appellant to take a standardized field sobriety test and two nonstandardized tests, all of which he failed.  The officer arrested appellant and found an empty bottle of Crown Royal and two empty beer bottles in his truck.

In December 2007, a Denton County grand jury indicted appellant for DWI. The indictment alleged that appellant had two prior DWI convictions.  The parties filed various pretrial documents, and appellant's trial began in August 2008. Appellant initially pled not guilty, but after the jury was selected, appellant changed his plea to guilty.

The parties presented evidence concerning appellant's punishment, and appellant testified and asked the jury to place him on community supervision. After the parties presented closing arguments, the jury assessed appellant's punishment at ten years' confinement.  Appellant filed a motion for new trial, but the trial court denied the motion.  Appellant subsequently filed his notice of appeal.

### The Voluntariness of Appellant's Guilty Plea and the Trial Court's Compliance with Statutorily Required Admonishments

In his first point, appellant contends that his guilty plea is involuntary because he did not receive proper constitutional or statutory admonishments when he made the plea.  Just before the parties' opening statements, in the presence of the jury, appellant pled guilty.[3]  The following colloquy then occurred:

---

[3]Appellant also pled true to the indictment's paragraphs that concerned his previous convictions.

3

THE COURT:  All right.

Mr. Gaal, is that your wish, to plead guilty?

DEFENDANT:  Yes, Your Honor.

THE COURT:  And you are pleading guilty?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Are you pleading guilty because you are guilty and for no other reason?

DEFENDANT:  Yes, Your Honor.

After the State called several witnesses and rested its case, appellant judicially confessed to DWI, signed plea paperwork, received admonishments about his constitutional and statutory rights from the trial court, and told the court that he did not have any questions about the admonishments or his guilty plea.[4] He affirmed in writing that he was aware of the consequences of his plea. He also affirmed that he had waived his rights "voluntarily, knowingly, and intelligently."  He told the trial court orally that he had discussed the plea paperwork with his counsel, and his counsel confirmed in writing that he had consulted appellant about his guilty plea.  Appellant orally recognized that he had waived a jury trial concerning his guilt.  The trial court asked him if he needed "any additional time to speak with [his] attorneys" about the plea, and appellant said, "No, sir."  Despite these facts, appellant asserts that the trial court's

---

[4]The plea paperwork recited that appellant was waiving his rights to remain silent, to confront and cross-examine witnesses, to not incriminate himself, and to be tried by a jury.

4

admonishments and his waiver of rights were not sufficient because they did not occur when he pled guilty but instead occurred hours after the plea.

**Constitutional admonishments and voluntariness**

"Waivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient awareness of the relevant circumstances and likely consequences." *Brady v. United States*, 397 U.S. 742, 748, 90 S. Ct. 1463, 1469 (1970). In appellant's argument that he did not receive timely constitutional admonishments to make him aware of the effects of his guilty plea, he relies primarily on *Boykin v. Alabama*, in which the United States Supreme Court held that when a defendant pleads guilty, the record must affirmatively disclose that the plea was "voluntarily and understandingly entered," and that courts may not "presume a waiver of . . . important [constitutional] rights from a silent record." 395 U.S. 238, 243–44, 89 S. Ct. 1709, 1712–13 (1969); *see Aguirre-Mata v. State*, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003) ("*Boykin* did not specifically set out what due process requires to be 'spread on the record' except to say generally that state courts should make sure that a guilty-pleading defendant 'has a full understanding of what the plea connotes and of its consequence.'") (footnote omitted); *Fuller v. State*, 253 S.W.3d 220, 229 (Tex. Crim. App. 2008) (relating that *Boykin's* requirement of requiring an affirmative showing of voluntariness protects a defendant's right of due process), *cert. denied*, 129 S. Ct. 904 (2009). The Court in *Boykin* recognized three critical constitutional rights that a guilty plea waives: the privilege against compelled

5

self-incrimination, the right to a trial by jury, and the right to confront one's accusers. 395 U.S. at 243, 89 S. Ct. at 1712.

A few years ago, the court of criminal appeals examined a case in which a defendant, who had been charged with five counts of aggravated sexual assault, pled guilty before a jury but did not receive express constitutional admonishments at the time of the plea (or any time thereafter). *See Gardner v. State*, 164 S.W.3d 393, 394 (Tex. Crim. App. 2005).[5] The defendant's counsel, however, "referred to [the defendant's] guilty plea several times during the punishment phase" and stressed to the jury throughout various parts of the trial that the defendant had taken responsibility for the offense. *Id.* at 395–97. The jury assessed punishment at thirty-five years' confinement on each count. *Id.* at 397. The defendant, citing *Boykin*, complained on appeal about not having received the admonishments. *Id.* The court of criminal appeals, held, however, that the record adequately showed

> that appellant understood that he was waiving [his constitutional] rights when he pled guilty. This may be inferred, in part, from appellant's counsel's statements during the punishment phase mentioning that appellant would testify even though he did not have to under the Fifth Amendment and that appellant's guilty plea saved the victim from having to testify and saved the jury from the "grueling experience" of determining appellant's guilt.
>
> The voluntary nature of appellant's guilty plea is further shown in the record by the overwhelming evidence that appellant's guilty

---

[5]As in this case, the trial court in *Gardner* ensured at the time of the plea that the defendant was pleading guilty for no other reason than that he was guilty. *Id.*

6

plea was part of a strategy (which we may also infer was done in consultation with competent counsel) to persuade the jury to grant appellant probation. Unlike this case, the record in *Boykin* was silent on whether the defendant's guilty plea was part of some trial strategy.

*Id.* at 399 (citations omitted).

The voluntary nature of appellant's guilty plea may likewise be shown by the record's indication that the plea was part of a trial strategy. From the beginning of his own counsel's voir dire, appellant's goals were to minimize the issue of his guilt and to extensively focus on the issue of punishment and the possibility that the jury would give him a low term of confinement or place him on community supervision.[6] For example, just after appellant's guilty plea, during his counsel's opening statement, counsel emphasized that appellant had pled guilty. Appellant's counsel declined to ask any questions of Cook when she recounted the events that occurred on the night of appellant's DWI, and counsel asked scant questions of the other witnesses who testified about the facts of appellant's offense.[7] When appellant testified, he confirmed his guilt, told the jury that he is an alcoholic and that he views alcohol as a "demon," expressed that he is a "changed person" since the time of his offense, and said, "[W]ell, I need help, and I feel like the only way that I'll be able to get help is probation and to be able

---

[6]During voir dire, appellant's counsel asked the jury panel members about their opinions on the purpose of confinement and conversed with them about specific attributes of community supervision.

[7]We note, therefore, that while appellant later expressly waived his right of confrontation, he nonetheless had the opportunity to exercise that right at trial.

to keep going and doing the things that I've been doing for the last several months." Finally, during his closing argument, appellant's counsel said, "Now, [appellant] has come to this court today, and he has admitted he has done this crime. He's taken responsibility . . . ."

As in *Gardner*, therefore, we hold that the record implies, through appellant's trial strategy of seeking community supervision, that appellant understood the effects of his plea when he made it even though he had not expressly been informed (at least by the trial court) of those effects at that time. *See id.*; *see also Vasquez v. State*, 522 S.W.2d 910, 912 (Tex. Crim. App. 1975) (stating that the "failure to give [admonishments regarding the right to confront witnesses or the right against compelled self-incrimination] does not invalidate a plea of guilty otherwise freely and voluntarily made"); *Slaughter v. State*, No. 02-07-00050-CR, 2007 WL 3120688, at *5 (Tex. App.—Fort Worth Oct. 25, 2007, no pet.) (mem. op., not designated for publication) (relying on *Gardner* to overrule an appellant's issue about the lack of express constitutional admonishments in conjunction with a guilty plea when the record showed that the plea was part of a trial strategy). And unlike in *Gardner*, this implication is confirmed by the additional fact that appellant actually received all required admonishments and expressly waived his constitutional rights at a time in which he could have withdrawn his plea. *See Murray v. State*, 302 S.W.3d 874, 883 (Tex. Crim. App. 2009) (explaining that when a defendant pleads guilty in front of a jury, the defendant may withdraw the plea at any time before the jury retires to consider

8

its verdict); *Abrego v. State*, 977 S.W.2d 835, 837 (Tex. App.—Fort Worth 1998, pet. ref'd) (describing the right to withdraw a guilty plea before the jury retires as "unqualified").

Furthermore, appellant had notice of the three constitutional rights mentioned in *Boykin* beyond the admonishments included in the plea paperwork. Before voir dire, in appellant's presence, the trial court told the jury about the Fifth Amendment, explaining that "[appellant] cannot be made to testify by anybody . . . unless he determines he wants to testify."[8] Later, before appellant testified, the trial court asked appellant whether he had talked with his attorneys about his Fifth Amendment right against compelled self-incrimination, and he confirmed that he had spoken with them. Next, appellant's knowledge of his right to confront and cross-examine witnesses may be inferred by the fact that his counsel actually did so. *See Johnson v. State*, 501 S.W.2d 306, 307 (Tex. Crim. App. 1973). And appellant must have been aware of his right to a jury trial since he exercised it when he announced his guilty plea in front of the jury and continued to exercise it, as to a determination of his punishment, after announcing the plea. *See id.*; *see also Williams v. State*, 674 S.W.2d 315, 318 (Tex. Crim. App. 1984) (stating that a "plea of guilty before a jury is a trial by jury and does not constitute waiver of trial by jury").

---

[8]We note that appellant signed the plea paperwork, and therefore expressly waived his right against compelled self-incrimination, before he testified.

9

For all of these reasons, we overrule appellant's first point to the extent that appellant contends that the trial court erred by not giving him express constitutional admonishments at the time that he pled guilty.

**Statutory admonishments**

Appellant also argues that the trial court erred by failing to give him statutory admonishments at the time that he pled guilty. Article 26.13 of the code of criminal procedure requires a trial court, prior to accepting a guilty plea, to notify a defendant of various facts and conditions related to the plea. *See* Tex. Code Crim. Proc. Ann. art. 26.13 (West 2009); *Bessey v. State*, 239 S.W.3d 809, 812 (Tex. Crim. App. 2007). The requirements of article 26.13 apply to a guilty plea that is made before a jury. *See Palacios v. State*, 556 S.W.2d 349, 352 (Tex. Crim. App. 1977). The trial court's failure to comply with such requirements may be raised for the first time on appeal. *See Bessey*, 239 S.W.3d at 812 (characterizing the right to admonishments under article 26.13 as a "waivable-only right," meaning that it "cannot be forfeited and may be raised for the first time on appeal unless it is expressly waived").

Assuming that the trial court erred by giving appellant his statutory admonishments after he pled guilty and after the State had rested its case,[9] that

---

[9]In *Palacios*, the court of criminal appeals said that article 26.13's admonishments should be given prior to the trial court's acceptance of the guilty plea. 556 S.W.2d at 351–52; *see also Tutor v. State*, 599 S.W.2d 818, 819 (Tex. Crim. App. [Panel Op.] 1980) ("The proper time to admonish a defendant is when he is arraigned, and prior to impaneling the jury to assess his punishment.").

error must be reviewed under the nonconstitutional harm standard of rule of appellate procedure 44.2(b). *See* Tex. R. App. P. 44.2(b) (stating that any nonconstitutional error that does not "affect substantial rights must be disregarded"); *Bessey*, 239 S.W.3d at 813; *Carranza v. State*, 980 S.W.2d 653, 657 (Tex. Crim. App. 1998); *Fakeye v. State*, 192 S.W.3d 112, 113 (Tex. App.— Fort Worth 2006), *aff'd*, 227 S.W.3d 714 (Tex. Crim. App. 2007).[10] Accordingly, the trial court's failure to admonish a defendant of a particular consequence of a plea is harmless when either that consequence does not apply to the defendant or the record demonstrates that the defendant otherwise had knowledge of the consequence. *See Bessey*, 239 S.W.3d at 813–14; *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006) (explaining that "[w]hen courts have failed to admonish guilty-pleading defendants on the immigration consequence of conviction, we have held the error was harmless error when the record showed that a defendant was a citizen of the United States"); *Slaughter*, 2007 WL 3120688, at *6 (disregarding error under rule 44.2(b) because "most of the admonishments set forth in article 26.13 [did] not apply to the facts of th[e] case; the one requirement that [did]—admonishment about the range of punishment— was discussed in voir dire").

---

[10]We recognize that rule 44.2(b) "does not place a burden on either party." *Umoja v. State*, 965 S.W.2d 3, 12 (Tex. App.—Fort Worth 1997, no pet.) (op. on reh'g).

The specific admonishments that article 26.13 requires are (1) the range of punishment attached to the offense, (2) admonishments related to plea bargains, (3) consequences of the plea affecting a noncitizen, and (4) the fact that sex offender registration requirements may be imposed following the conviction. Tex. Code Crim. Proc. Ann. art. 26.13(a); *Bessey*, 239 S.W.3d at 812. In the case before us, appellant's guilty plea did not occur because of a plea bargain, appellant was born in Dallas and is a United States citizen, and DWI is not an offense that requires sex offender registration. *See* Tex. Code Crim. Proc. Ann. art. 62.001(5) (West Supp. 2010). As for the admonishment concerning the range of punishment, the record shows that during the voir dire of the jury panel, the prosecutor and appellant's counsel separately explained the punishment range for felony DWI as two to ten years' confinement. Thus, we conclude no harm resulted from a lack of an admonition about the range of punishment when appellant pled guilty. *See* Tex. R. App. P. 44.2(b); *Moore v. State*, 278 S.W.3d 444, 447–48 (Tex. App.—Houston [14th Dist.] 2009, no pet.).

We hold that even if the trial court erred by giving appellant statutory admonishments after the State rested its case, that error is harmless and must therefore be disregarded. *See* Tex. R. App. P. 44.2(b). Thus, we overrule the remainder of appellant's first point.

**The Effectiveness of Appellant's Counsel**

In his second point, appellant argues that his trial counsel's assistance was ineffective because counsel allegedly did not call a material witness at trial, failed

12

to "recognize [his] lack of normal cognitive ability," and failed to adequately convey the State's plea offer to him.

**Standard of review**

To establish ineffective assistance of counsel, appellant must show by a preponderance of the evidence that his counsel's representation fell below the standard of prevailing professional norms and that there is a reasonable probability that, but for counsel's deficiency, the result of the trial would have been different. *Strickland v. Washington*, 466 U.S. 668, 687, 104 S. Ct. 2052, 2064 (1984); *Salinas v. State*, 163 S.W.3d 734, 740 (Tex. Crim. App. 2005); *Mallett v. State*, 65 S.W.3d 59, 62–63 (Tex. Crim. App. 2001); *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999); *Hernandez v. State*, 988 S.W.2d 770, 770 (Tex. Crim. App. 1999).

In evaluating the effectiveness of counsel under the first prong, we look to the totality of the representation and the particular circumstances of each case. *Thompson*, 9 S.W.3d at 813. The issue is whether counsel's assistance was reasonable under all the circumstances and prevailing professional norms at the time of the alleged error. *See Strickland*, 466 U.S. at 688–89, 104 S. Ct. at 2065. Review of counsel's representation is highly deferential, and the reviewing court indulges a strong presumption that counsel's conduct fell within a wide range of reasonable representation. *Salinas*, 163 S.W.3d at 740; *Mallett*, 65 S.W.3d at 63. A reviewing court will rarely be in a position on direct appeal to fairly evaluate the merits of an ineffective assistance claim. *Salinas*, 163 S.W.3d at

13

740; *Thompson*, 9 S.W.3d at 813–14. "In the majority of cases, the record on direct appeal is undeveloped and cannot adequately reflect the motives behind trial counsel's actions." *Salinas*, 163 S.W.3d at 740 (quoting *Mallett*, 65 S.W.3d at 63). To overcome the presumption of reasonable professional assistance, "any allegation of ineffectiveness must be firmly founded in the record, and the record must affirmatively demonstrate the alleged ineffectiveness." *Id.* (quoting *Thompson*, 9 S.W.3d at 813). It is not appropriate for an appellate court to simply infer ineffective assistance based upon unclear portions of the record. *Mata v. State*, 226 S.W.3d 425, 432 (Tex. Crim. App. 2007).

The second prong of *Strickland* requires a showing that counsel's errors were so serious that they deprived the defendant of a fair and reliable trial. *Strickland,* 466 U.S. at 687, 104 S. Ct. at 2064. In other words, appellant must show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* at 694, 104 S. Ct. at 2068. A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.* The ultimate focus of our inquiry must be on the fundamental fairness of the proceeding in which the result is being challenged. *Id.* at 697, 104 S. Ct. at 2070.

**Analysis**

Appellant first contends that his trial counsel was ineffective because counsel did not adequately investigate testimony that could have been offered by Dr. Carlos Venegas or call Dr. Venegas to testify. To obtain relief on an

14

ineffective assistance of counsel claim based on an uncalled witness, appellant must show that Dr. Venegas was available to testify and that his testimony would have benefited appellant. *See Ex parte White*, 160 S.W.3d 46, 52 (Tex. Crim. App. 2004) (citing *King v. State*, 649 S.W.2d 42, 44 (Tex. Crim. App. 1983)).

Appellant called Dr. Venegas to testify in the hearing on appellant's motion for new trial. During this hearing, Dr. Venegas said that he treated appellant for diabetes and alcoholism and that two weeks before appellant's trial, he briefly spoke on the telephone with one of appellant's trial attorneys, Brian Bolton, for about five minutes. During this conversation, Dr. Venegas stated that he was going to be in California during appellant's trial, and Bolton did not seem interested in the conversation.

Dr. Venegas testified that appellant's diabetes and the disease's complications "may have had something to do with his lack of judgment and cognitive skills" and that appellant could not understand this interrelation between alcoholism and diabetes.[11] According to Dr. Venegas, Bolton told him that he did not need him to testify even though Bolton had not heard all of the facts that he could have testified to. However, Dr. Venegas told Martha Bowling (an employee at a recovery center that appellant used) about this information regarding appellant, and Bowling testified at trial regarding appellant's outpatient treatment

---

[11]Dr. Venegas explained, "[D]iabetes over time can affect . . . the brain, therefore diminishing [a person's] potential to take up oxygen, which would affect brain cells, which would also impair cognition."

15

and the treatment that he could receive through various injections. Bowling's testimony included a substantial part of what Dr. Venegas said he could have testified about if Bolton had decided to call him as a witness.[12]

Bowling also testified at the hearing on appellant's motion for new trial. She believed that appellant had trouble understanding the lessons taught in the outpatient classes he attended. However, she did not provide testimony at trial in that regard because Bolton "didn't seem to want to hear any details" about her concerns for appellant's cognitive ability. Bowling said that she could have also testified about the potential effect of high blood sugar on an individual's judgment.

Bolton testified that appellant hired him to develop a strategy of seeking community supervision although the State had previously offered two years' confinement (which was the minimum term) during plea bargain negotiations with appellant's prior counsel. Bolton knew that Dr. Venegas was one of appellant's physicians, and Bolton knew of the medical treatment that appellant had received. Moreover, Bolton understood the relation between appellant's diabetes and alcoholism and stated that "[d]iabetic conditions, you know, always I've seen, as far as I can tell with members of the defense bar, have been an issue for contesting guilt." However, he believed that focusing on appellant's diabetes in

---

[12]Dr. Venegas stated that he had a "continual dialogue" with Bowling about appellant's treatments.

16

relation to appellant's punishment would have been detrimental because the

> jury may have seen it as a smoke screen, an artificial, shallow excuse. And I'm certainly not taking away from [appellant's] medical issues, but from a jury's perspective, it's been my experience and the lawyers that I know of, diabetic issues are not . . . a punishment issue. It's more of a guilt/innocence thing to attack what we see on the videotape or why someone performs poorly on field sobriety tests, not is this person eligible for probation or confinement.

Because Bolton did not believe that presenting evidence about appellant's diabetic conditions matched appellant's strategy of seeking community supervision, Bolton did not believe that Dr. Venegas's testimony could have added anything that could not have been provided by another witness. Finally, Bolton testified that he nonetheless considered obtaining a subpoena for Dr. Venegas "[j]ust to have him [at trial] in case the bottom fell out . . . . Just in case."

In our ineffective assistance review, we must exercise substantial restraint before second-guessing or interfering in the matters of trial strategy and tactics. *Holland v. State*, 761 S.W.2d 307, 321 (Tex. Crim. App. 1988), *cert. denied*, 489 U.S. 1091 (1989); *see Hill v. State*, 303 S.W.3d 863, 878–79 (Tex. App.—Fort Worth 2009, pet. ref'd); *Ex parte Jessep*, 281 S.W.3d 675, 682 (Tex. App.—Amarillo 2009, pet. ref'd). Thus, the mere fact that another attorney might have pursued a different course will not support a finding of ineffectiveness. *Jessep*, 281 S.W.3d at 682.

Bolton's testimony shows that he made a strategic decision after speaking with Dr. Venegas (albeit briefly) that his testimony would not have been beneficial

17

to appellant's goal of obtaining community supervision. We conclude that appellant has not shown a sufficient reason on appeal for us to second-guess that decision or to depart from our usual deference to trial counsel in ineffective assistance claims. *See Salinas*, 163 S.W.3d at 740.

Moreover, portions of Dr. Venegas's testimony might have actually harmed appellant's case. Dr. Venegas said that appellant did not take advised injections related to his alcoholism despite their availability and despite Dr. Venegas's repeated phone calls to appellant. At one point, the following exchange occurred between the trial court and Dr. Venegas:

> THE COURT: Okay. Now I'm looking at the indictment here and the case that he was tried for. He committed the offense of driving while intoxicated on the 23rd day of September of 2007. That was after your treatment.
>
> THE WITNESS: The first, yes, correct.
>
> THE COURT: Okay. So then, really and truly, either your treatment wasn't having any effect or [appellant] wasn't really caring about the treatment and following the regimen that you prescribed for him?
>
> THE WITNESS: Solely, it would be a combination of both. I would have to say a combination of both.

Dr. Venegas's testimony that appellant had either not followed or not cared about his treatment could have hampered appellant's community supervision strategy. *See White*, 160 S.W.3d at 52 (explaining that the appellant has the burden in an ineffective assistance challenge to show that an uncalled witness's testimony would have been beneficial). Dr. Venegas's testimony could have left the jury

18

with the impression that treatment was not working because appellant became Dr. Venegas's patient in October 2006, and appellant's arrest for the DWI in this case occurred almost a year later.

Finally, even if we were to conclude that Bolton should have sought a continuance and attempted to use Dr. Venegas's testimony, our review of the record does not show that the totality of appellant's counsel's representation was ineffective. *See King*, 649 S.W.2d at 44 (explaining that "[i]neffective assistance of counsel cannot be established by separating out one portion of the trial counsel's performance for examination"); *Pieringer v. State*, 139 S.W.3d 713, 717 (Tex. App.—Fort Worth 2004, no pet.).

For all of these reasons, we hold that appellant has not sustained his burden of proving by a preponderance of the evidence that Bolton was ineffective because he did not use greater efforts to explore Dr. Venegas's testimony or use the testimony at trial. *See Strickland*, 466 U.S. at 687, 104 S. Ct. at 2064.

Appellant also succinctly asserts in his brief that his counsel was ineffective by not recognizing his "lack of cognitive abilities." Appellant says in his brief that a defendant's "cognitive abilities . . . to even enter a knowing, intentional, and voluntary plea [are] always at issue." Also, some of Dr. Venegas's testimony at the hearing on appellant's motion for new trial attempted to connect appellant's alleged cognitive deficiency to his decision to plead guilty. But the record shows that for strategic reasons, appellant engineered his decision to plead guilty. Bolton testified at the hearing that appellant hired him

even though appellant's previous attorney had negotiated a plea bargain for two years' confinement because appellant wanted a "second opinion" about whether he could be granted community supervision. Bolton confirmed during the hearing that he informed appellant about the risk of rejecting the plea bargain and seeking community supervision at trial. Furthermore, Bolton and appellant's other trial attorney opined at trial that appellant was capable and competent to plead guilty.

Next, appellant's use of his alleged lack of cognition to attempt to excuse his DWI would have likely been unsuccessful because Dr. Venegas admitted that appellant understood that if he consumed excessive alcohol and drove, he could be arrested for DWI. And although Dr. Venegas asserted that the jury may have been more lenient if it knew that appellant misunderstood his alcoholism, offering such testimony to the jury might have been incongruous with appellant's plan to take responsibility for his offense and seek community supervision.

We hold that appellant has not shown a reasonable probability that his counsel's greater understanding of his apparent lack of cognitive ability would have changed the outcome of his trial or the punishment given by the jury. We overrule that aspect of appellant's ineffective assistance claim on that basis. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

Finally, appellant argues that his original counsel was ineffective by allegedly not conveying the complete terms of the State's plea bargain offer. *See Ex parte Lemke*, 13 S.W.3d 791, 795 (Tex. Crim. App. 2000) ("Failure of defense

20

counsel to inform a criminal defendant of plea offers made by the State is an omission that falls below an objective standard of professional reasonableness."); *Flores v. State*, 784 S.W.2d 579, 581 (Tex. App.—Fort Worth 1990, pet. ref'd) ("A defense attorney has an obligation to fully advise his client of the terms . . . of plea offers extended by the State.")  Appellant contends in his brief that "[t]he record *seems to indicate* there may have been an acceptance deadline (set by the court) or the plea offer would be withdrawn," that he "was not informed by his original trial counsel that there was a deadline for acceptance," and that "[n]othing in the record controverts [his] assertion he was never informed of any deadline . . . , *assuming that deadline indeed existed*."  [Emphasis added.] Appellant concludes, "Assuming *arguendo that a deadline was attached* . . . , there is no evidence said deadline . . . was conveyed to [him]."  [Emphasis added.]

During a hearing on appellant's motion to recuse the trial judge, the prosecutor said,

> The initial plea offer on th[e] case was three years, and we worked it down to two . . . .
>
> . . . Mr. Dobson [appellant's original counsel] got ahold of me and said, ["]Look, I can probably get him to understand the reasons behind taking two years.["] . . . I told Mr. Dobson, ["]That's fine with the State.["]  The offer was three, and I'm not going to quibble over a year. So . . . in the end of June, that's what I was expecting to do on June 24th, was plea him out.  That's what the Court was expecting.
>
> That morning, it came to my attention that Mr. Dobson was no longer representing [appellant], that new attorneys had been hired

21

and those are the two attorneys sitting here in front of you. They showed up that afternoon. . . .

Once Mr. Dobson got off the case, I informed both the two new attorneys that as far as the State was concerned, the plea deal was off. . . . [Appellant] had a good offer; he chose not to take it.

During the same hearing, appellant's trial counsel said, "[W]e were called before the Honorable Court to give our announcement as to the State's offer, which [appellant] refused."

Thus, even if the two-year plea bargain offer had a deadline that appellant did not know about, the termination of the offer was not caused by the expiration of the deadline; it was caused by the State's decision to withdraw the offer and appellant's nearly contemporaneous decision to reject it. Because appellant cannot show a reasonable probability that the result of the trial court's proceedings would have changed had he known of a deadline to accept the State's plea bargain offer, we overrule that basis for appellant's ineffective assistance claim. *See Strickland*, 466 U.S. at 694, 104 S. Ct. at 2068.

We hold that each of appellant's contentions regarding his claim of ineffective assistance is without merit, and we overrule his second point.

**The Trial Court's Alleged Interference in Plea Negotiations**

In his third point, appellant contends that the trial court improperly engaged in his plea negotiations with the State. The basis for this allegation is the following statement that the trial judge made during a pretrial hearing in June 2008:

22

THE COURT: All right. We're supposed to have a plea here today. It appears that [appellant] does not want to plea. For the record, I will not accept any plea bargain in this matter, unless it is for the maximum term of ten years.

Appellant claims that this statement evidences the trial court's intrusion into the plea negotiation process and warrants reversal.[13]

Plea bargains are an integral part of the criminal justice system. *Moore v. State*, 295 S.W.3d 329, 331 (Tex. Crim. App. 2009) (citing *Gutierrez v. State*, 108 S.W.3d 304, 306 (Tex. Crim. App. 2003)). At its core, a plea bargain is a contract between the State and the defendant. *Id.* As a contract, when both parties have entered knowingly and voluntarily into the plea bargain, they are bound by its terms once it is accepted by the judge. *Id.* Because a plea-bargain agreement is solely between the State and the defendant, only those parties may alter the terms of the agreement; the trial court commits error if it unilaterally adds unnegotiated terms to a plea-bargain agreement. *Id.* at 332 (explaining that the "only proper role of the trial court in the plea-bargain process is advising the defendant whether it will 'follow or reject' the bargain between the state and the defendant").

A trial judge's participation in plea discussions prior to an agreement being reached is disfavored because the power and position of the judge may

---

[13]In his supplemental brief on remand, appellant seems to contend that the trial court coerced him into entering his guilty plea at trial. Appellant does not explain, however, how the statement that is quoted above affected his decision to plead guilty before the jury.

23

improperly influence the defendant to enter a guilty plea. *Wright v. State*, 776 S.W.2d 763, 767 (Tex. App.—Corpus Christi 1989, pet. ref'd); *see Perkins v. Court of Appeals for Third Supreme Judicial Dist. of Texas, at Austin*, 738 S.W.2d 276, 282 (Tex. Crim. App. 1987); *Lynch v. State*, 318 S.W.3d 902, 903 (Tex. App.—San Antonio 2010, pet. ref'd). The trial judge should always avoid the appearance of any judicial coercion or prejudgment of the defendant because such influence might affect the voluntariness of the defendant's plea. *Perkins*, 738 S.W.2d at 282. The trial court remains free in every case, however, to refuse to allow plea bargaining or to reject a particular plea bargain entered into by the State and the defendant. *Gaal*, 332 S.W.3d at 457; *State ex rel. Bryan v. McDonald*, 662 S.W.2d 5, 9 (Tex. Crim. App. 1983) (citing *Morano v. State*, 572 S.W.2d 550, 551 (Tex. Crim. App. [Panel Op.] 1978)); *Smith v. State*, 243 S.W.3d 722, 726 (Tex. App—Texarkana 2007, no pet.).

The record and applicable case law do not support the contention that the trial court improperly interjected itself into the plea-bargaining process. The trial court's statement that it would not "accept any plea bargain in this matter, unless it [was] for the maximum term" did not unilaterally add unnegotiated terms to the plea-bargain agreement. *See Moore*, 295 S.W.3d at 332. Instead, the trial court simply refused to allow any plea bargaining by effectively nullifying any advantage to be gained by using a plea bargain—after all, a plea bargain for the maximum amount of the statutory punishment is really no plea bargain at all. *See Gaal*, 332 S.W.3d at 458. The trial court was acting within its right to "refuse

24

to allow plea bargaining or to reject a particular plea bargain." *See State ex rel. Bryan*, 662 S.W.2d at 9. We are unpersuaded by appellant's attempt to equate the trial court's decision to effectively foreclose plea negotiations with interference in negotiations.[14]

For these reasons, we conclude that the trial court did not interfere with plea negotiations. We overrule appellant's third point.

## Conclusion

Having overruled all of appellant's remaining points on remand, we affirm the trial court's judgment.

TERRIE LIVINGSTON
CHIEF JUSTICE

PANEL: LIVINGSTON, C.J.; GARDNER and WALKER, JJ.

DO NOT PUBLISH
Tex. R. App. P. 47.2(b)

DELIVERED: July 14, 2011

---

[14]Appellant asserts that the trial court "invaded the province of the prosecution and the defense in continued negotiations to achieve a plea-bargain disposition of the case." In interpreting the trial judge's comment at issue, however, the court of criminal appeals opined, "The trial judge, perhaps inarticulately, *cut off plea bargaining*." *Gaal*, 332 S.W.3d at 458 (emphasis added). The court held that a "reasonable person . . . would translate the judge's statement as, 'I'm not going to reset this case for any more plea negotiations; we're going to trial.'" *Id.* Thus, under the court of criminal appeals's reasoning, the trial court did not participate in the plea bargaining process but instead terminated it. Appellant also argues that the trial court took a "firm position on punishment" when making its statement about refusing to accept any plea bargain except for the maximum amount of confinement. But the court of criminal appeals rejected appellant's position in that regard. *Id.*

25