IN THE COURT OF CRIMINAL APPEALS


OF TEXAS






NO. PD-1131-04






MICHAEL SHANE GARDNER, Appellant



v.



THE STATE OF TEXAS





ON APPELLANT'S PETITION FOR DISCRETIONARY REVIEW


FROM THE SECOND COURT OF APPEALS


WISE COUNTY





 Hervey, J., delivered the opinion of the Court in which Keller, PJ., Meyers,
Womack, Keasler, Holcomb and Cochran, JJ., joined. Price and Johnson, JJ.,
concurred.


OPINION 



 We decide, as a matter of federal constitutional law, that the record in this particular case
adequately shows that appellant voluntarily pled guilty.

 Appellant was charged in a five count indictment with aggravated sexual assault of a six-year-old girl. These charges arose out of one sexual encounter involving appellant, the victim and
the victim's biological father who was appellant's long-time friend and a police officer. Appellant
provided the police with a written confession which appellant unsuccessfully sought to have
suppressed. Appellant also filed an election to have a jury assess punishment and an application for
community supervision (probation) "in the event a punishment phase of the trial is necessary."

 Appellant pled guilty before the jury after the prosecution read Counts I through IV of the
indictment. Without any objection from appellant, the trial court accepted appellant's guilty plea
after ascertaining that appellant was pleading guilty for no other reason than that he was guilty and
not because of any promise made on behalf of the State.

 [THE COURT]: Thank you.


 Mr. Green [defense counsel], I would ask at this time of the Defendant, how do you
plead to the charge in the indictment?


 [THE DEFENDANT]: Guilty, your Honor.


 [THE COURT]: Thank you.


 Ladies and gentlemen of the jury, at this time the Defendant has entered a plea before
you in this case of guilty.


 At this time that takes out the-basically the first phase of this case that we have
discussed, that being the guilt/innocence stage.


 Is the Prosecution ready to proceed with the punishment stage at this time?


 [THE PROSECUTION]: The State is ready, Judge.


 [THE COURT]: And is the Defendant ready to proceed?


 [DEFENSE COUNSEL]: The Defendant is ready, your Honor.


 [THE COURT]: Very well.


 You may make an opening statement with regards to the punishment stage of this
case.


 [THE PROSECUTION]: Thank you, Judge.


 May it please the Court?


 [THE COURT]: Yes, sir.


 [THE PROSECUTION]: Counsel for Defense.


 [THE COURT]: And before you get started, I think I need to do one other thing.


 [THE PROSECUTION]: Yes, sir.


 [THE COURT]: At this time the Court has heard the Defendant's plea of guilty.


 If the Defendant would please stand at this time.


 [THE DEFENDANT]: (The Defendant complied.)


 [THE COURT]: And I would simply ask the Defendant, are you pleading guilty
because you are guilty and for no other reason?


 [THE DEFENDANT]: Yes, your Honor.


 [THE COURT]: Very well.


 You are not-


 And I'm asking-


 Are you-


 You are not-You are not pleading guilty because of any promise that anyone has
made you on behalf of the State of Texas. Is that correct?


 [THE DEFENDANT]: Yes, your Honor.


 [THE COURT]: All right. Then at this time the Court does accept your plea of
guilty, and at this time the Court does find you guilty of the offense as charged in the
indictment.


 You may be seated.


 And you may proceed.


 The prosecution presented evidence at the punishment phase establishing appellant's guilt
of the offenses to which appellant pled guilty. On cross-examination, appellant's counsel asked
Texas Ranger Ray, who obtained appellant's confession, whether he believed that appellant accepted
responsibility by confessing.

 Q. [DEFENSE]: By giving a three-page statement, do you believe [appellant]
accepted responsibility by doing so?


 [THE PROSECUTION]: Your Honor, I'm going to object as speculation. That's
[sic] calls for speculation on the part of this witness.


 [THE COURT]: Overruled.


 Q. By giving his statement to you is he accepting responsibility?


 A. [RAY]: I don't know if he accepted responsibility or not. The overwhelming
emotion I saw was a sense of relief.


 Q. Would you at least categorize it as doing the right thing when giving his
statement?


 A. Yes, sir, I would say that.

 

 Appellant's counsel referred to appellant's guilty plea several times during the punishment
phase. For example, during his opening statement, counsel claimed that the guilty plea demonstrated
appellant's acceptance of responsibility and that it relieved the young victim from having to "come
into the courtroom" and the jury from the "grueling experience" of deliberating appellant's
guilt/innocence. Appellant's counsel also stated during his opening statement that appellant would
testify "even though the Fifth Amendment means that he can sit over there and not say anything."

 [DEFENSE COUNSEL]: May it please the Court.


 Ladies and gentlemen, [appellant] just did what he has always done, and that is
accept his responsibility, like we want people to do.


 He's done a couple of things as a consequence-


 There's a couple of consequences that have occurred because of that. Number two,
he has removed from your duties the responsibility to deliberate about guilt or not
guilt. You no longer have to do that. You no longer have to go through that grueling
experience. He made that decision for you.


 Secondly, he's alleviated the need for the State to prove their case to you. They no
longer have to, because he has pled guilty, and more importantly, he's alleviated the
need for a child to come into the courtroom.


 He has done that.


 And I expect he is going to go one step further, and even though the Fifth
Amendment means that he can sit over there and not say anything, I expect that he
is going to want to talk to you.


 And I expect that he is-will want to explain what happened. I don't expect him to
make excuses. I don't expect for him to paint himself as a victim. I expect him to
be stand-up guy, like he's always been. 

 

 Appellant testified at the punishment phase that he was the same one who admitted his guilt
before the judge and the jury.

 Q. [DEFENSE]: Michael, you are obviously the same Michael Shane Gardner that's
[sic] on trial here today. Correct?


 A. [APPELLANT]: Yes, sir.


 Q. And the same one that [sic] has admitted guilt yesterday before the Judge and
before this jury. Correct?


 A. Yes, sir.

 

 Appellant's counsel argued during closing jury arguments that appellant's guilty plea was
"worth something" because it showed that he accepted responsibility.

 [DEFENSE]: There's probably been no greater crime in this country over the last 10
years than that of personal responsibility.


 If [appellant] had pled not guilty, I suppose the prosecutor would be up here arguing
about personal responsibility. That there aren't people in this country, there aren't
enough of them that won't say I did wrong when they've done wrong.


 There won't-


 There's not enough people that admit their shortcomings when they have done
something wrong and have a shortcoming.


 [Appellant] did something that you don't see in this criminal justice system every
day. You see him plead guilty to a jury, and that's worth something, despite the fact
that the prosecutors indicate that it is not.


 They say, oh, he didn't have a choice.


 Oh, he did.


 But he has a confession. Look.


 Could have challenged that confession. It's amazingly-


 It's not in his handwriting. It was not audiotaped. It wasn't videotaped. His initials
making corrections are nowhere in it. It's an almost comical confession from a-from
a Ranger, although I certainly respect him, but could he have said those aren't my
words?


 Yes, he could have; but he did not.


 He took responsibility by accepting that statement and not challenging it. He
obviously took responsibility in giving the statement. You've heard it time and time
again. Was there any coercion on the Ranger's part?


 No.


 This is something that man wanted to do, and I don't think there's any question about
that whatsoever. It is something that he knew. It was the right thing to do to talk to
the police and give a statement to the police, even though he-he knew it had dire
consequences. He did it even though the Ranger gave him every opportunity to walk
away.


 He certainly took responsibility like you've heard after his statement. He could've
ran like the wind. He could've been a transient right now in Mexico, but he did not. 
He stayed to accept his punishment.


 He could have contacted [his police officer friend] and let [him] do whatever he
wishes to do, and he did not.


 He, once again, accepted responsibility.


 And yesterday, of course, he accepted responsibility once again by pleading guilty,
and I told you a couple of ramifications; number one, you guys didn't have to worry
about it and have to fight and deliberate about it and have to go through that ordeal. 
He saved you that. He did save [the victim] from having to come in here, but there's
other consequences, as well, because now he is a convicted felon and a sex offender,
and in this society, you might as well have a scarlet letter on your forehead.


 He will forever be ostracized by his community. He will forever be shunned by his
neighbors. He will forever have his picture on the Internet where friends, family, and
even casual acquaintances will look at it and speculate as to what occurred, and that
is for life.


 He also subjected himself to responsibility for and by taking the stand
yesterday-today and talking to you. He did not have to do that, but he wanted to. He
wanted to face his accusers. He wanted to bear his sins. He'll tell you about the drug
use, the marijuana use, and the methamphetamine use.


 The prosecution asked the jury to sentence appellant to life in prison. Appellant's counsel
asked the jury to grant appellant probation. The jury sentenced appellant to 35 years in prison on
each count.

 Appellant claimed on direct appeal that his guilty "plea was involuntary and a violation of
his federal due process rights because the [trial] court failed to admonish him of his various
constitutional rights and determine that his plea was intelligently and voluntarily made." See
generally Boykin v. Alabama, 395 U.S. 238 (1969); Aguirre-Mata v. State, 125 S.W.3d 473
(Tex.Cr.App. 2003). Appellant argued in the Court of Appeals:

 This is not a case of solely failing to admonish the Defendant regarding the
applicable range of punishment as required by [Article 26.13(a)(1), Tex. Code Crim.
Proc.]. The Defendant is well aware that such a failure is not consider [sic]
constitutional error and that a record reflecting that the applicable range of
punishment was discussed during voir dire is enough to dispel a claim that the
Defendant's "substantial rights" were violated under [Tex. R. App. Proc. 44.2(b)]. 
(Citations omitted).


 Nor is this case about failing to admonish the Defendant about the sexual offender
requirements of [Article 26.13(a)(5)]. The Defendant also admits that if that were
his only complaint his visit before this court would be short lived. (Citations
omitted).


 This case, however, concerns a complete absence of the trial court to admonish the
Defendant regarding any of his rights in order to insure that the plea is intelligently
and voluntarily made-a failure that implicates the due process clause of the United
States Constitution as held in [Boykin v. Alabama]. In Boykin, the record was
completely silent "concerning [the] plea." See Boykin, 89 S.Ct. at 1710 ("so far as
the record show[ed], the judge asked no question of the [Defendant] concerning his
plea, and [the Defendant] did not address the court."). The key to the holding, of
course, was that before a trial judge can accept a guilty plea, there must be an
affirmative showing that it was given intelligently and voluntarily. Id., 89 S.Ct. at
1711. In order to find that the plea was entered "intelligently" or "voluntarily," the
court must "canvass[] the matter with the accused to make sure he has a full
understanding of what the plea connotes and of its consequences." Id., 89 S.Ct. at
1712.

 

 The Court of Appeals, however, decided that the trial court's error in failing to provide the
Article 26.13 admonishments applicable to appellant did not affect appellant's substantial rights
under the harm analysis for non-constitutional error set out in Rule 44.2(b) because, among other
things, appellant did not show that he would not have pled guilty had the trial court properly
admonished him. See Gardner v. State, slip op. at 2-4 No. 02-03-110-CR (Tex.App.-Fort Worth,
May 27, 2004) (not designated for publication). (1) We exercised our discretionary authority to review
this decision. The two grounds upon which we granted review state:

 1) The Court of Appeals erred in holding the trial court's error in failing to
adequately admonish the Defendant was statutory error under [Aguirre-Mata] instead
of constitutional error under [Boykin v. Alabama].


 2) The Court of Appeals erred in failing to address whether the admonishments and
inquiries of the Defendant by the trial court was sufficient to satisfy [Boykin v.
Alabama] that the plea was intelligently and voluntarily made.

 

 We agree with the claim presented in ground two that the state-law issue addressed by the
Court of Appeals was not the constitutional issue that appellant raised under Boykin. Whether a trial
court has complied with Article 26.13 and whether it has complied with Boykin are two separate
issues. See generally Aguirre-Mata, 125 S.W.3d at 474-77. 

 With respect to ground one, appellant makes essentially the same claim here that he made
in the Court of Appeals. We initially note that appellant does not claim, and the record does not
support a finding, that appellant's guilty plea "cannot stand as an intelligent admission of guilt." See
Henderson v. Morgan, 426 U.S. 637, 644-45 n.13 (1976) (2) and at 649-50 n. 2 (White, J., concurring)
(in cases where court reads the indictment to the defendant at arraignment or at time of plea,
defendant's guilty plea may well be deemed a factual admission that he did what he is charged with
doing). Nor can it be said that appellant was terrorized into pleading guilty. See Boykin, 395 U.S.
at 242-43 ("[i]gnorance, incomprehension, coercion, terror, inducements, subtle or blatant threats
might be a perfect cover-up of unconstitutionality"); Aguirre-Mata, 125 S.W.3d at 475 n.7.

 Rather, appellant claims that his guilty plea is invalid under Boykin because the record does
not affirmatively show that appellant understood the nature of the constitutional due process
protections that he was waiving when he pled guilty. (3) See Brady v. United States, 397 U.S. 742,
747-48 n.4 (1970) (new element added in Boykin to substantive requirement that a plea of guilty
must be intelligent and voluntary is the "requirement that the record must affirmatively disclose that
a defendant who pleaded guilty entered his plea understandingly and voluntarily"); see also Benitez,
124 S.Ct. at 2341 n.10 (conviction obtained by guilty plea must be reversed when record contains
no evidence that defendant knew of the rights he was putatively waiving). In Aguirre-Mata, this
Court noted that Boykin did not specifically set out what must be "spread on the record" to comply
with Boykin's mandate. See Aguirre-Mata, 125 S.W.3d at 475. (4) In addition to mentioning things
like the invalidity of guilty pleas induced by "terror," Boykin mentioned three constitutional rights
that a guilty plea waives: the privilege against compelled self-incrimination, the right to a jury trial
and the right to confront one's accusers. Boykin, 395 U.S. at 243-44. (5)

 The record in this case adequately shows that appellant understood that he was waiving these
rights when he pled guilty. This may be inferred, in part, from appellant's counsel's statements
during the punishment phase mentioning that appellant would testify even though he did not have
to under the Fifth Amendment and that appellant's guilty plea saved the victim from having to testify
and saved the jury from the "grueling experience" of determining appellant's guilt. Cf. Henderson,
426 U.S. 647 (appropriate to presume in most cases that defense counsel routinely explains the
nature of the offense in sufficient detail to give the accused notice of what he is being asked to
admit); Henry, 933 F.2d at 559 (defendant's awareness of constitutional rights waived by guilty plea
can be reasonably inferred from the transcript).

 The voluntary nature of appellant's guilty plea is further shown in the record by the
overwhelming evidence that appellant's guilty plea was part of a strategy (which we may also infer
was done in consultation with competent counsel) to persuade the jury to grant appellant probation. 
Unlike this case, the record in Boykin was silent on whether the defendant's guilty plea was part of
some trial strategy. See Boykin, 395 U.S. at 240 ("Trial strategy may of course make a plea of guilty
seem the desirable course. But the record is wholly silent on that point and throws no light on it."). 
We further note that in Brady, the Supreme Court upheld the validity of a guilty plea accompanied
by admonishments similar to those here. Brady, 397 U.S. at 743-44 n.2 (6) and at 754-55 (noting that
defendant's guilty plea was "entered in open court and before a judge obviously sensitive to the
requirements of the law with respect to guilty pleas"). 

 The judgment of the Court of Appeals is affirmed.

 Hervey, J.


Delivered: May 4, 2005

Publish
1. This is in accordance with our prior decisions holding that a trial court's failure to provide
the Article 26.13 admonishments is non-constitutional error which is subject to a Rule 44.2(b) harm
analysis. See Aguirre-Mata, 125 S.W.3d at 474-76; Carranza v. State, 980 S.W.2d 653, 656
(Tex.Cr.App. 1998). Since our decision in Aguirre-Mata, the United States Supreme Court has
applied the equivalent of our Rule 44.2(b) harm standard to a trial court's failure to comply with the
federal equivalent of Article 26.13 (which the defendant raised for the first time on appeal) and held
that this unpreserved error is harmless unless the guilty-pleading defendant shows "a reasonable
probability that, but for the [unpreserved] error, he would not have entered the plea." See United
States v. Benitez, U.S. , 124 S.Ct. 2333, 2340 (2004); Aguirre-Mata, 125 S.W.3d at 475-76
(comparing state and federal practice). 
2. In Henderson, 426 U.S. at 644-45 n.13, the Supreme Court stated:


 A plea may be involuntary either because the accused does not understand the nature
of the constitutional protections that he is waiving (citation omitted), or because he
has such an incomplete understanding of the charge that his plea cannot stand as an
intelligent admission of guilt. Without adequate notice of the nature of the charge
against him, or proof that he in fact understood the charge, the plea cannot be
voluntary in this latter sense. (Citation omitted). 
3. Whether appellant, in fact, understood the nature of these constitutional protections is
irrelevant under Boykin. See Aguirre-Mata, 125 S.W.3d at 474-75; Boykin, 395 U.S. at 244-45.
4. It was not necessary for Boykin to specifically set out what must be "spread on the record"
since the record in that case was completely silent "concerning the plea." See Boykin, 395 U.S. at
239.
5. At least one federal circuit has decided that the "constitution does not require the specific
admonitions listed in Boykin as a condition precedent to the validity of a guilty plea," and that all a
trial court must do to comply with Boykin's mandate is to explain to guilty-pleading defendants "that
they have the right to plead guilty and that, if they plead guilty, they waive the right to trial." See
U.S. v. Henry, 933 F.2d 553, 559 (7th Cir. 1991), cert. denied, 503 U.S. 997 (1992) and cases cited. 
It is not necessary to decide this case on the basis that the "constitution does not require the specific
admonitions listed in Boykin as a condition precedent to the validity of a guilty plea."
6. In Brady, 397 U.S. at 743-44, n.2, the trial court admonished the defendant as follows:


 [THE COURT]: You understand that in [pleading guilty] you are admitting and
confessing the truth of the charge contained in the indictment and that you enter a
plea of guilty voluntarily, without persuasion, coercion of any kind? Is that right?


 [DEFENDANT]: Yes, your Honor.


 [THE COURT]: And you do do that?


 [DEFENDANT]: Yes, I do.


 [THE COURT]: You plead guilty to the charge?


 [DEFENDANT]: Yes, I do.