**Opinion issued March 19, 2015**



**In The**

# Court of Appeals

**For The**

# First District of Texas

_____

## NO. 01-14-00296-CR

_____

**BOBBY EUGENE EASLEY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 184th District Court**
**Harris County, Texas**
**Trial Court Case No. 1376456**

---

## MEMORANDUM OPINION

After appellant, Bobby Eugene Easley, without an agreed punishment recommendation from the State, pleaded guilty to the offense of aggravated

robbery with a deadly weapon,[1] a jury assessed his punishment at confinement for fourteen years.  In three issues, appellant contends that the trial court erred in not properly admonishing him prior to his entry of his plea of guilty, not ensuring that he knowingly relinquished his constitutional due process rights, and including only a few basic conditions of community supervision in the jury charge.

We affirm.

### Background

After appellant entered his plea of guilty, he testified that on February 4, 2013, he was "driving around" in his car with a friend when they spotted the complainant, Rodrigo Vega, walking through a parking lot.  Appellant stopped the car, approached the complainant while pointing a gun at him, and asked for his belongings.  After the complainant handed appellant three dollars and his cellular telephone, appellant drove away.  A few minutes later, when appellant realized that he may have dropped his own cellular telephone on the ground during the robbery, he returned to the parking lot to retrieve it.  Police officers apprehended appellant shortly thereafter.  The officers also found the complainant's cellular telephone and the gun that appellant had used to rob the complainant in the car that appellant had been driving.

---

[1]     *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011).

2

**Plea Admonishments**

In his first issue, appellant argues that the trial court erred in not properly admonishing him prior to his entry of his plea of guilty because it did not inform him of the range of punishment or the immigration consequences of a guilty plea. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp. 2014). He asserts, thus, that the trial court should not have accepted his involuntary plea. *See id*. Although it concedes that the trial court erred in admonishing appellant, the State asserts that appellant was not harmed by the trial court's error.

To ensure that trial courts enter and accept only a constitutionally valid plea and to assist trial courts in making the determination that a defendant's relinquishment of rights is made knowingly and voluntarily, Texas law requires trial courts to admonish defendants before accepting pleas of guilty. *Carranza v. State*, 980 S.W.2d 653, 656 (Tex. Crim. App. 1998); *see* TEX. CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp. 2014). As noted by appellant, trial courts are statutorily required to inform a defendant who is pleading guilty to an offense of the range of punishment attached to the offense. TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1) (Vernon Supp. 2014). A trial court must also inform a defendant who is pleading guilty to an offense of the immigration consequences of his plea, i.e., that he could be subject to deportation. *Id*. art. 26.13(a)(4) (Vernon Supp. 2014).

*Range of Punishment*

Trial courts are required to substantially comply with article 26.13(a), either orally or in writing. *Id.* art. 26.13(c), (d). A failure to properly admonish a defendant about the range of punishment before accepting a guilty plea is subject to harmless error analysis. *See* TEX. R. APP. P. 44.2(b); *Aguirre-Mata v. State*, 125 S.W.3d 473 474 (Tex. Crim. App. 2003). In conducting this harm analysis, we must disregard the error unless it affected the defendant's substantial rights. *Bessey v. State*, 239 S.W.3d 809, 813 (Tex. Crim. App. 2007). If it did, the error is not harmless. *Id.* In the context of a guilty plea, an error affects substantial rights when, considering the record as a whole, we do not have a fair assurance that the defendant's decision to plead guilty would not have changed had the trial court properly admonished him. *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006).

Article 26.13, in pertinent part, provides,

(a)    Prior to accepting a plea of guilty . . . the court shall admonish the defendant of:

(1)    the range of punishment attached to the offense;

. . .

(4)    the fact that if the defendant is not a citizen of the United States of America, a plea of guilty . . . for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under Federal law.

4

> (b)   No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.

TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1), (4), (b).

Here, the record reflects that the trial court, at the plea hearing, did not admonish appellant about the range of punishment. Because the trial court erred in not doing so, we must conduct a harm analysis pursuant to rule 44.2(b). *Burnett v. State*, 88 S.W.3d 633, 637 (Tex. Crim. App. 2002).

Although appellant asserts that the record is silent regarding what occurred during his plea hearing, this Court received a supplemental reporter's record on February 3, 2015.[2] The supplemental record reflects that on February 18, 2014, the trial court held a hearing on appellant's guilty plea and allowed appellant's trial counsel to question him about his plea. Appellant indicated that he was aware that he could reasonably receive "probation up to 10 years" or the jury could sentence him "anywhere from five years all the way up to 99 years or life." Other portions of the record also indicate that appellant actually knew the range of punishment attached to his offense. During voir dire, in appellant's presence,[3] the trial court

---

[2]   After appellant filed his brief, the State filed a motion to supplement the record. *See* TEX. R. APP. P. 34.6(d) (allowing any party to direct court reporter to file supplemental reporter's record). Although the Court notified appellant that a supplemental reporter's record had been filed, appellant has not supplemented or amended his brief in light of the supplemented record.

[3]   At the beginning of voir dire, the trial court asked appellant to stand.

5

stated, "I'm informed by both lawyers that [the trial court] went through all of the admonishments with the defendant before he accepted the plea." The trial court then informed the venire members that "[a]ggravated robbery has a very broad punishment range, from 5 years to 99 years or life in prison . . . ." It further stated that if a defendant has never before been convicted of a felony, "then the jury may consider [probation]." Finally, the State and appellant's trial counsel discussed the range of punishment multiple times with the venire members.

Nothing in the record suggests that appellant was unaware of the range of punishment. Instead, the record reflects that appellant heard about the range of punishment attached to his offense on multiple occasions from his counsel, the State, and the trial court. Based on the entire record before us, we conclude that appellant had knowledge of the range of punishment, and we have fair assurance that appellant's substantial rights were not affected by the trial court's error in not admonishing him about the range of punishment attached to his offense. *See* TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(1); *Burnett*, 88 S.W.3d at 639 (concluding admonishment error harmless when nothing in record showed defendant did not know range of punishment and record contained many instances in which parties referred to sentence jury could assess).

*Immigration Consequences*

Trial courts are required to admonish defendants, prior to their pleas of guilty or nolo contendere, of "the fact that if the defendant is not a [U.S. Citizen] a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law[.]" TEX. CODE CRIM. PROC. ANN. art. 26.13(a)(4).

When a trial court fails to admonish a defendant of the immigration consequences of his plea, such error is harmless if the record reflects that he is a U.S. citizen and, therefore, not subject to deportation. *Cain v. State*, 947 S.W.2d 262, 264 (Tex. Crim. App. 1997) (holding trial court's failure to admonish harmless error when defendant U.S. citizen). Here, appellant testified during the punishment phase of trial that he was born in Houston, Texas. Because appellant is a U.S. citizen, the trial court's error in not admonishing him about the deportation consequences of his plea is harmless. *Id.*

We overrule appellant's first issue.

**Voluntariness of Guilty Plea**

In his second issue, appellant argues that the "trial court erred in failing to ensure a knowing relinquishment of the constitutional due process rights that he waived by pleading guilty" because there is "no evidence that [he] was advised of his right against self-incrimination prior to pleading guilty . . . ." He asserts that a

plea of guilty "is the most literal and blatant manifestation of self-incrimination" and, here, there is no evidence that he "voluntarily and understandingly entered his plea[] of guilty." The State argues that the trial court did not violate appellant's due process rights because the record affirmatively shows that appellant entered his plea voluntarily and knowingly.

A guilty plea constitutes a waiver of three constitutional rights: (1) the right to a jury trial, (2) the right to confront one's accusers, and (3) the right not to incriminate oneself. *Boykin v. Alabama*, 395 U.S. 238, 243, 89 S. Ct. 1709, 1712 (1969). Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. *Id*. at 242, 89 S. Ct. at 1712–13; *McCarthy v. United States*, 394 U.S. 459, 466, 89 S. Ct. 1166, 1171 (1969). To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady v. United States*, 397 U.S. 742, 755, 90 S. Ct. 1463, 1472 (1970). The Texas Court of Criminal Appeals has noted "that *Boykin* did not specifically set out what must be 'spread on the record' to comply with [its] mandate." *Davidson v. State*, 405 S.W.3d 682, 687 (Tex. Crim. App. 2013). "So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied." *Id*.

Appellant submits that we should scrutinize the record "to determine whether [he] had been properly informed of his rights even though he plead guilty to the jury" as the court of criminal appeals did in *Gardner v. State*, 164 S.W.3d 393 (Tex. Crim. App. 2005). In *Gardner*, the defendant pleaded guilty before a jury to five separate offenses of aggravated sexual assault, but did not receive proper admonishments at the time of the plea. *Id*. at 394. The defendant's counsel "referred to [the defendant's] guilty plea several times during the punishment phase" and stressed to the jury throughout various parts of the trial that the defendant had taken responsibility for the offense. *Id*. at 395–97. The jury assessed punishment at confinement for thirty-five years for each offense. *Id*. at 397. The defendant, citing *Boykin*, complained on appeal that he did not receive the proper admonishments. *Id*. The court of criminal appeals, held, however, that the record showed,

> [The defendant] understood that he was waiving [his constitutional] rights when he pled guilty. This may be inferred, in part, from [defendant's] counsel's statements during the punishment phase mentioning that [defendant] would testify even though he did not have to under the Fifth Amendment and that [defendant's] guilty plea saved the victim from having to testify and saved the jury from the "grueling experience" of determining [defendant's] guilt.

> The voluntary nature of [defendant's] guilty plea is further shown in the record by the overwhelming evidence that [defendant's] guilty plea was part of a strategy (which we may also infer was done in consultation with competent counsel) to persuade the jury to grant [defendant] probation. Unlike this case, the record in *Boykin* was

9

> silent on whether the defendant's guilty plea was part of some trial strategy.

*Id*. at 399 (citations omitted). Appellant argues that *Gardner* "is distinguishable" from the instant case because, there, the trial court "did engage in some admonishment that was recorded in the transcript," unlike here.

More importantly, here, as in *Gardner*, the voluntary nature of appellant's guilty plea is shown by the evidence that his plea was part of a trial strategy intended to persuade the jury to grant him community supervision. During his plea hearing, appellant testified that he chose to plead guilty to give a jury an opportunity to assess community supervision as a punishment. At voir dire, the point of the opening statement of appellant's trial counsel was to extensively focus on the issue of punishment and the possibility that the jury could place him on community supervision. Counsel reminded the jury that appellant had pleaded guilty and it was only there to determine an appropriate sentence. Counsel further emphasized that appellant had pleaded guilty when he said, "There is an incredible 800-pound gorilla sitting at the end of the table, so to speak; and that [appellant] has pled guilty to aggravated robbery with a deadly weapon." Unlike in *Boykin*, the record here is not silent regarding the trial strategy behind appellant's guilty plea. *See Boykin*, 396 U.S. at 240, 89 S. Ct. at 1709 ("Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it.").

10

Moreover, during the punishment phase of trial, when appellant was asked if he understood that he had a right to remain silent, he answered affirmatively. He also stated from the witness stand that he pleaded guilty because he was guilty and that "[i]f you did make that mistake . . . you have to own up to it and take responsibility for it."

Finally, during closing argument, appellant's counsel said, "[Appellant] pled guilty to it in front of you-all. He accepted and said: I'm putting my faith and my trust in 12 fellow citizens of this county, and I'm owning up to what I did." Trial counsel further emphasized that appellant did not argue about his guilt, point the finger at someone else, or assert that someone else made him do it. And he noted that appellant "got on [the] witness stand, admitted it all to you, and . . . apologized to the complainant."

As in *Gardner*, the record reveals appellant's trial strategy of seeking community supervision and demonstrates that he understood the consequences of his plea when he entered it even though he had not been expressly informed of those consequences at the time. *See Gardner*, 164 S.W.3d at 399; *see also Vasquez v. State*, 522 S.W.2d 910, 912 (Tex. Crim. App. 1975) (stating "failure to give [admonishments regarding right to confront witnesses or right against self-incrimination] does not invalidate a plea of guilty otherwise freely and voluntarily made"). Although the trial court did not specifically admonish appellant on each

of his constitutional rights at the time he entered his plea, we hold that the record demonstrates that he was otherwise aware of his rights and entered his guilty plea voluntarily and knowingly. *See Davison*, 405 S.W.3d at 687 (explaining "it is not enough that the record is unrevealing with respect to whether [the defendant] was admonished by the trial court; the record must also be silent with respect to whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent").

We overrule appellant's second issue.

### Conditions of Community Supervision

In his third issue, appellant argues the trial court erred in including "only nine basic potential conditions of community supervision" in the jury charge because this created a "harmful and misleading impression of the definition of community supervision in the minds of the jury." Appellant asserts that "[b]y only including a few of the less-restrictive conditions of community supervision, the jury charge deviated from the statutory language and misled the jury into believing that community supervision is much less onerous than in reality." The State responds that the trial court properly defined community supervision in the charge and it was not required to list all twenty-four statutory conditions of community supervision. *See* TEX. CODE CRIM. PROC. ANN. art. 42.12, § (2)(2)(B) (Vernon Supp. 2014).

The trial court instructed the jury that community supervision is:

> [T]he placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the Court for a specified period during which a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

This definition tracks the language of article 42.12. Directly after its definition of community supervision, but before it listed nine possible conditions of community supervision, the trial court noted that "if community supervision is recommended by the Jury, the Court may impose the following conditions, *among others*, with respect thereto." (Emphasis added).

Appellant asserts that the trial court's list of nine possible conditions of community supervision "constitute[ed] a significant part of the 'definition' of community supervision" and by "only informing the jury of a few minor conditions, it created a misleading instruction that was harmful to [appellant]." Appellant further asserts that the State emphasized the problem when it repeatedly referred to community supervision and the stated conditions as a "joke."

Here, the trial court provided the jury with the statutory definition of community supervision, listed some of the possible conditions of community supervision, and informed the jurors that additional conditions could be imposed. To the extent that appellant wanted more conditions included in its charge, the trial

13

court was not required to submit all of the possible statutory conditions of community supervision in the jury charge on punishment. *See Yarbrough v. State*, 779 S.W.2d 844, 845 (Tex. Crim. App. 1989); *Wade v. State*, 951 S.W.2d 886, 893 (Tex. App.—Waco 1997, pet. ref'd) ("[F]ailure to enumerate all of the terms and conditions [of community supervision] is not considered harmful to the accused or restrictive of the court's authority.").

Moreover, appellant has not directed us to any authority that requires a trial court to include conditions of community supervision in its punishment charge to a jury. *See* TEX. CODE CRIM. PROC. ANN. art 42.12, § 11(a) (stating "[t]he judge may impose any reasonable condition"). Indeed, a trial court ultimately determines what conditions to include and what to leave out in ordering community supervision. *See id.* (stating that "[t]he judge of the court . . . shall determine the conditions of community supervision"). Accordingly, we hold that the trial court did not err in instructing the jury on community supervision. *See McNamara v. State*, 900 S.W.2d 466, 468 (Tex. App.—Fort Worth 1995, no pet.) (holding failure to enumerate conditions of probation in jury charge not harmful); *Saenz v. State*, 879 S.W.2d 301, 306 (Tex. App.—Corpus Christi 1994, no pet.) (stating trial court need not inform jury of any conditions of community supervision in jury charge); *Herrera v. State*, 848 S.W.2d 244, 248 (Tex. App.—San Antonio 1993, no pet.)

(determining omission of conditions of community supervision from jury charge not fundamental error).

We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.


Terry Jennings
Justice


Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish.  TEX. R. APP. P. 47.2(b).