PD-0468-15
COURT OF CRIMINAL APPEALS
AUSTIN, TEXAS
Transmitted 6/3/2015 8:00:16 PM
Accepted 6/4/2015 11:52:54 AM
ABEL ACOSTA
CLERK

No. PD-0468-15

## TO THE COURT OF CRIMINAL APPEALS OF TEXAS

**BOBBY EASLEY**
*Appellant*

v.

**THE STATE OF TEXAS,**
*Appellee*

---

## PETITION FOR DISCRETIONARY REVIEW

---

On Petition For Discretionary Review from the First Court of Appeals Cause No. 01-14-00296-CR, affirming the judgment in Cause No. 1376456 from the 184th District Court of Harris County, Texas.

---

FILED IN
COURT OF CRIMINAL APPEALS

June 4, 2015

ABEL ACOSTA, CLERK

**ALEXANDER BUNIN**
Chief Public Defender
Harris County, Texas

**SARAH V. WOOD**
Assistant Public Defender
Harris County, Texas
Texas Bar Number 24048898
1201 Franklin, 13th Floor
Houston, Texas 77002
Phone: (713) 368-0016
Fax: (713) 368-9278
Sarah.Wood@pdo.hctx.net

**Counsel for Appellant**

## IDENTITY OF PARTIES AND COUNSEL

APPELLANT:                              Bobby Easley

TRIAL PROSECUTORS:                      Anthony Robinson
                                        Assistant District Attorney
                                        Harris County, Texas
                                        1201 Franklin, Suite 600
                                        Houston, Texas 77002

DEFENSE COUNSEL AT TRIAL:               Tom Martin
                                        1018 Preston, Suite 500
                                        Houston, Texas 77002

PRESIDING JUDGE:                        Hon. Jan Krocker
                                        184th District Court
                                        Harris County, Texas
                                        1201 Franklin, 17th floor
                                        Houston, Texas 77002

DEFENSE COUNSEL ON APPEAL:              Sarah V. Wood
                                        Assistant Public Defender
                                        Harris County, Texas
                                        1201 Franklin, 13th Floor
                                        Houston, Texas 77002

# TABLE OF CONTENTS

Identity of Parties and Counsel...................................................................................... ii

Table of Contents .......................................................................................................... iii

Index of Authorities ...................................................................................................... iv

Statement Regarding Oral Argument ........................................................................... iv

Statement of the Case .................................................................................................... iv

Statement of Procedural History ................................................................................. iv

Ground For Review ....................................................................................................... iv

> Are juries who assess punishment being routinely misled when they are instructed as to only a few of the more "cushy" potential conditions of probation?

Argument ......................................................................................................................... 1

   Reason for Review ...................................................................................................... 1

   Factual Background .................................................................................................... 1

   "Conditions of This Charge is a Joke" ...................................................................... 2

Prayer for Relief ............................................................................................................. 8

Certificate of Service and Compliance ......................................................................... 8

Appendix ......................................................................................................................... 9

# INDEX OF AUTHORITIES

*Flores v. State*, 513 S.W.2d 66 (Tex. Crim. App. 1974). ........................................................... 3

*Tovar v. State*, 165 S.W.3d 785 (Tex. App.—San Antonio 2005, no pet.) ........................... 5

# STATEMENT REGARDING ORAL ARGUMENT

Appellant requests oral argument as it may aid the Court in its analysis of the issues.

# STATEMENT OF THE CASE

On April 10, 2013, Mr. Bobby Easley was indicted for aggravated robbery (C.R. at 13). He pled guilty to a jury and proceeded to a trial on punishment only (C.R. at 91). After hearing testimony, the jury assessed a sentence of 14 years in TDCJ (C.R. at 91).

# STATEMENT OF PROCEDURAL HISTORY

The First Court of Appeals affirmed the trial court's judgment in an unpublished opinion. *Easley v. State,* 01-14-00296-CR, 2015 WL 1263140 (Tex. App.—Houston [1st Dist.] Mar. 19, 2015, no. pet. h.). No motion for rehearing was filed.

# GROUND FOR REVIEW

Are juries who assess punishment being routinely misled when they are instructed as to only a few of the more "cushy" potential conditions of probation?

**Reason for Review**

The court of appeals decided an issue that has not been fully deliberated by this Court. Juries are routinely given incomplete and misleading punishment instructions based on ill-considered precedent.

**Factual Background**

Bobby Easley is a 24 year-old man who had never been in any trouble prior to February 4, 2013 (4 R.R. at 79, 99). He was raised by his mother and father in a relatively "rough" neighborhood known as South Park (4 R.R. at 76). But he graduated high school and attended college at San Angelo State (4 R.R. at 100). Mr. Easley had stable employment, coached youth football, and always helped his church with charity drives (5 R.R. at 16-21). The State did not bring out any extraneous offenses or other bad acts during the extensive punishment hearing.

And thus it did not seem likely that Mr. Easley would have robbed an innocent man at gunpoint on that tragic winter evening. But he pled guilty and readily admitted that – for reasons which are still unclear, perhaps even to him – he joined a "neighborhood friend" in robbing Mr. Rodrigo Vega (4 R.R. at 19, 117). Mr. Vega was outside trying to shut a gate when Mr. Easley approached him with a gun and said, "This is a stickup; don't move. Give me everything you have." (4 R.R. at 20). Mr. Vega handed over $3 and his cell phone without further incident (4 R.R. at 21). Mr. Easley

1

then jumped back in his car and did not realize that he had dropped his own cell phone on the ground (5 R.R. at 8). He returned to the scene right away to look for it and was arrested (5 R.R. at 9).

It was revealed at trial that in spite of his relatively stable life, Bobby Easley had not been the same since the untimely death of his mother in 2011 which was impacted exponentially by the death of his favorite uncle a mere two days later (4 R.R. at 79). He had moved back home to Houston to help take care of her when she got sick, but she died (5 R.R. at 104). Since then, as his father explained, he was "just struggling, upset" (4 R.R. at 80-81). His mom and his uncle were "his best friends" and to him it simply felt like he "lost his heart." (5 R.R. at 104).

Mr. Easley spoke to the jury, "I feel like this has really taught me a lesson and opened my eyes to the fact that there are consequences for everything you do. I am not the type of person that does this, never have been. I wasn't raised like this. I made a decision that was the wrong decision at that time, and no one deserves to be robbed, have a firearm pointed at them, or anything of that nature. And that was totally wrong." (5 R.R. at 16). The jury sentenced him to 14 years in prison.

**"Conditions of This Charge is a Joke"**

Counsel for the appellant cannot state the issue in this case better than the prosecutor himself proclaimed on the record at trial, "Conditions of this charge is a joke [sic]." The trial court erred by listing only the first nine (undemanding) potential conditions of probation in the jury charge.

2

In 1974, this Court held—with neither discussion nor explanation, "While it is considered good practice to enumerate in the court's charge the probationary conditions which the court may impose if probation is recommended by the jury, the failure to so enumerate the said conditions is not harmful to the accused nor restrictive of the court's authority under the statute." *Flores v. State*, 513 S.W.2d 66, 69 (Tex. Crim. App. 1974). Courts have since followed suit with little explanation. This case illustrates the folly of this holding.

It is axiomatic that proper instructions correctly stating the applicable law must be given as to the penalty that may be inflicted on the defendant. In this way, the trial court is responsible for reducing the possibility of confusing the jury. By routinely giving jurors an incomplete definition of probation, jurors all over the state are being mislead about the ramifications of their verdict on punishment.

The jury charge in this case included only nine basic potential conditions of community supervision (Supp. C.R. at 5-6). It is difficult to see why jurors should only be given the first nine conditions as an example. If the object is to save paper, then certainly none of the potential conditions should be listed. By only providing certain conditions, the jury is led to expect—through the power of suggestion—that those alone are typical in forming the basis of probation. The charge in this case was as follows:

"Community supervision" means the placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the Court for a specified period during which a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

Community supervision shall be granted by the Court if the Jury recommends it in their verdict.

If community supervision is recommended by the Jury, the Court may impose the following conditions, among others, with respect thereto:

CONDITIONS

(1) Commit no offense against the laws of this or any other State or of the United States;

(2) Avoid injurious or vicious habits;

(3) Avoid persons or places of disreputable or harmful character;

(4) Report to the supervision officer as directed by the judge or supervision officer and obey all rules and regulations of the community supervision and corrections department;

(5) Permit the supervision officer to visit him at his home, employment, or elsewhere;

(6) Work faithfully at suitable employment as far as possible;

(7) Remain within a specified place;

(8) Pay the fine, if one is assessed, and court costs whether a fine be assessed or not, in one or several sums, and make restitution or reparation in any sum that the judge shall determine;

(9) Support his dependents.

4

Characterizing probation as consisting of only a few simple requirements created a harmful and misleading impression of the nature of community supervision and constituted error. It makes it less likely for a jury to assess probation when they are led to believe it is likely to contain only a few of the more "cushy" requirements.

"If a phrase, term, or word is statutorily defined, the trial court should submit the statutory definition to the jury." *Tovar v. State*, 165 S.W.3d 785, 790 (Tex. App.—San Antonio 2005, no pet.). The conditions allowed to be imposed by community supervision, when included in the jury charge, essentially constitute the only meaningful part of the "definition" of community supervision that is submitted to the jury. In this case, by only informing the jury of a few minor conditions, it created a misleading instruction that was harmful to the appellant.

The prosecutor's closing argument clearly shows the problem with listing only certain conditions. He repeatedly mocked and referred to the conditions of probation as a "joke."

- "Conditions of this charge is a joke [sic]. That's done every single day by people in their lives. Don't hang around disreputable people. Got to point a gun at someone's head to figure that one out. Don't commit any other crimes… Don't use drugs." (5 R.R. at 59).

- "Oh, sorry, first offense. Got to have me some probation, please." (5 R.R. at 57).

- "Probation is a joke. For this type of case, for these facts, it is an absolute joke." (5 R.R. at 57).

- "Please give me probation…I will do everything that's put on that sheet." (5 R.R. at 59).

The charge only tells the jury that the court may impose those nine conditions "among others." The jurors are then left to disregard as pure speculation any other potential conditions they can imagine. The jury charge omitted many more significant conditions such as:

- Confinement in jail for up to 180 days under §12

- Up to 1,000 hours of community service under §16

- Remain under custodial supervision in a community corrections facility, obey all rules and regulations of the facility, and pay a percentage of the defendant's income to the facility for room and board

- Submit to testing for alcohol or controlled substances

- Attend counseling sessions for substance abusers or participate in substance abuse treatment services in a program or facility

- Pay all or part of the reasonable and necessary costs incurred by the victim for psychological counseling made necessary by the offense

- In any manner required by the judge, provide public notice of the offense for which the defendant was placed on community supervision in the county in which the offense was committed

- Submit to electronic monitoring

By only including a few of the less-restrictive conditions of community supervision, the jury charge deviated from the statutory language and misled the jury into believing that community supervision is much less onerous than in reality. The prosecutor used this mischaracterization in the jury instruction to the State's advantage in arguing against probation – listing the conditions in the charge and calling them a joke.

## PRAYER FOR RELIEF

For the reasons stated above, the Appellant prays that this Court grant her petition, review the case, and hold that the Court of Appeals erred by affirming the trial court's judgment of sentence.

Respectfully submitted,

**ALEXANDER BUNIN**
Chief Public Defender
Harris County Texas


**/s/ Sarah V. Wood**
**SARAH V. WOOD**
Assistant Public Defender
Harris County Texas
1201 Franklin, 13th Floor
Houston Texas 77002
(713) 368-0016 (phone)
(713) 368-9278 (fax)
State Bar Number 24048898


## CERTIFICATE OF SERVICE AND COMPLIANCE

This is to certify that a copy of the foregoing petition for discretionary review has been served on the District Attorney of Harris County, Texas, by the efile service and to the State Prosecuting Attorney and that this petition has 1,423 words according to the computer program used to draft it.

**/s/ Sarah V. Wood**
**SARAH V. WOOD**

# APPENDIX

2015 WL 1263140
Only the Westlaw citation is currently available.

SEE TX R RAP RULE 47.2 FOR DESIGNATION AND SIGNING OF OPINIONS.

MEMORANDUM OPINION
DO NOT PUBLISH. TEX.R.APP. P. 47.2(B).
Court of Appeals of Texas,
Houston (1st Dist.

Bobby Eugene Easley, Appellant
v.
The State of Texas, Appellee

NO. 01–14–00296–CR | Opinion issued March 19, 2015

On Appeal from the 184th District Court, Harris County, Texas, Trial Court Case No. 1376456

**Attorneys and Law Firms**

Sarah V. Wood, for Bobby Eugene Easley.

Devon Anderson, Alan Curry, Carly Dessauer, for The State of Texas.

Panel consists of Justices Jennings, Higley, and Huddle.

**MEMORANDUM OPINION**

Terry Jennings, Justice

**\*1** After appellant, Bobby Eugene Easley, without an agreed punishment recommendation from the State, pleaded guilty to the offense of aggravated robbery with a deadly weapon,[1] a jury assessed his punishment at confinement for fourteen years. In three issues, appellant contends that the trial court erred in not properly admonishing him prior to his entry of his plea of guilty, not ensuring that he knowingly relinquished his constitutional due process rights, and including only a few basic conditions of community supervision in the jury charge.

We affirm.

**Background**

After appellant entered his plea of guilty, he testified that on February 4, 2013, he was "driving around" in his car with a friend when they spotted the complainant, Rodrigo Vega, walking through a parking lot. Appellant stopped the car, approached the complainant while pointing a gun at him, and asked for his belongings. After the complainant handed appellant three dollars and his cellular telephone, appellant drove away. A few minutes later, when appellant realized that he may have dropped his own cellular telephone on the ground during the robbery, he returned to the parking lot to retrieve it. Police officers apprehended appellant shortly thereafter. The officers also found the complainant's

cellular telephone and the gun that appellant had used to rob the complainant in the car that appellant had been driving.

## Plea Admonishments

In his first issue, appellant argues that the trial court erred in not properly admonishing him prior to his entry of his plea of guilty because it did not inform him of the range of punishment or the immigration consequences of a guilty plea. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(b) (Vernon Supp.2014). He asserts, thus, that the trial court should not have accepted his involuntary plea. *See id.* Although it concedes that the trial court erred in admonishing appellant, the State asserts that appellant was not harmed by the trial court's error.

To ensure that trial courts enter and accept only a constitutionally valid plea and to assist trial courts in making the determination that a defendant's relinquishment of rights is made knowingly and voluntarily, Texas law requires trial courts to admonish defendants before accepting pleas of guilty. *Carranza v. State,* 980 S.W.2d 653, 656 (Tex.Crim.App.1998); *see* TEX.CODE CRIM. PROC. ANN. art. 26.13(a) (Vernon Supp.2014). As noted by appellant, trial courts are statutorily required to inform a defendant who is pleading guilty to an offense of the range of punishment attached to the offense. TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(1) (Vernon Supp.2014). A trial court must also inform a defendant who is pleading guilty to an offense of the immigration consequences of his plea, i.e., that he could be subject to deportation. *Id.* art. 26.13(a)(4) (Vernon Supp.2014).

### *Range of Punishment*
Trial courts are required to substantially comply with article 26.13(a), either orally or in writing. *Id.* art. 26.13(c), (d). A failure to properly admonish a defendant about the range of punishment before accepting a guilty plea is subject to harmless error analysis. *See* TEX.R.APP. P. 44.2(b); *Aguirre–Mata v. State,* 125 S.W.3d 473 474 (Tex.Crim.App.2003). In conducting this harm analysis, we must disregard the error unless it affected the defendant's substantial rights. *Bessey v. State,* 239 S.W.3d 809, 813 (Tex.Crim.App.2007). If it did, the error is not harmless. *Id.* In the context of a guilty plea, an error affects substantial rights when, considering the record as a whole, we do not have a fair assurance that the defendant's decision to plead guilty would not have changed had the trial court properly admonished him. *Anderson v. State,* 182 S.W.3d 914, 919 (Tex.Crim.App.2006).

**\*2** Article 26.13, in pertinent part, provides,

>   (a) Prior to accepting a plea of guilty ... the court shall admonish the defendant of:
>
>     (1) the range of punishment attached to the offense;
>
>   ...
>
>     (4) the fact that if the defendant is not a citizen of the United States of America, a plea of guilty ... for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under Federal law.
>
>   (b) No plea of guilty or plea of nolo contendere shall be accepted by the court unless it appears that the defendant is mentally competent and the plea is free and voluntary.

TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(1), (4), (b).

Here, the record reflects that the trial court, at the plea hearing, did not admonish appellant about the range of punishment. Because the trial court erred in not doing so, we must conduct a harm analysis pursuant to rule 44.2(b). *Burnett v. State,* 88 S.W.3d 633, 637 (Tex.Crim.App.2002).

Although appellant asserts that the record is silent regarding what occurred during his plea hearing, this Court received a supplemental reporter's record on February 3, 2015.[2] The supplemental record reflects that on February 18, 2014,

the trial court held a hearing on appellant's guilty plea and allowed appellant's trial counsel to question him about his plea. Appellant indicated that he was aware that he could reasonably receive "probation up to 10 years" or the jury could sentence him "anywhere from five years all the way up to 99 years or life." Other portions of the record also indicate that appellant actually knew the range of punishment attached to his offense. During voir dire, in appellant's presence,[3] the trial court stated, "I'm informed by both lawyers that [the trial court] went through all of the admonishments with the defendant before he accepted the plea." The trial court then informed the venire members that "[a]ggravated robbery has a very broad punishment range, from 5 years to 99 years or life in prison...." It further stated that if a defendant has never before been convicted of a felony, "then the jury may consider [probation]." Finally, the State and appellant's trial counsel discussed the range of punishment multiple times with the venire members.

Nothing in the record suggests that appellant was unaware of the range of punishment. Instead, the record reflects that appellant heard about the range of punishment attached to his offense on multiple occasions from his counsel, the State, and the trial court. Based on the entire record before us, we conclude that appellant had knowledge of the range of punishment, and we have fair assurance that appellant's substantial rights were not affected by the trial court's error in not admonishing him about the range of punishment attached to his offense. *See* TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(1); *Burnett,* 88 S.W.3d at 639 (concluding admonishment error harmless when nothing in record showed defendant did not know range of punishment and record contained many instances in which parties referred to sentence jury could assess).

### *Immigration Consequences*
**\*3** Trial courts are required to admonish defendants, prior to their pleas of guilty or nolo contendere, of "the fact that if the defendant is not a [U.S. Citizen] a plea of guilty or nolo contendere for the offense charged may result in deportation, the exclusion from admission to this country, or the denial of naturalization under federal law[.]" TEX.CODE CRIM. PROC. ANN. art. 26.13(a)(4).

When a trial court fails to admonish a defendant of the immigration consequences of his plea, such error is harmless if the record reflects that he is a U.S. citizen and, therefore, not subject to deportation. *Cain v. State,* 947 S.W.2d 262, 264 (Tex.Crim.App.1997) (holding trial court's failure to admonish harmless error when defendant U.S. citizen). Here, appellant testified during the punishment phase of trial that he was born in Houston, Texas. Because appellant is a U.S. citizen, the trial court's error in not admonishing him about the deportation consequences of his plea is harmless. *Id.*

We overrule appellant's first issue.

### Voluntariness of Guilty Plea

In his second issue, appellant argues that the "trial court erred in failing to ensure a knowing relinquishment of the constitutional due process rights that he waived by pleading guilty" because there is "no evidence that [he] was advised of his right against self-incrimination prior to pleading guilty...." He asserts that a plea of guilty "is the most literal and blatant manifestation of self-incrimination" and, here, there is no evidence that he "voluntarily and understandingly entered his plea[ ] of guilty." The State argues that the trial court did not violate appellant's due process rights because the record affirmatively shows that appellant entered his plea voluntarily and knowingly.

A guilty plea constitutes a waiver of three constitutional rights: (1) the right to a jury trial, (2) the right to confront one's accusers, and (3) the right not to incriminate oneself. *Boykin v. Alabama,* 395 U.S. 238, 243, 89 S.Ct. 1709, 1712 (1969). Accordingly, a guilty plea, to be consistent with due process of law, must be entered knowingly, intelligently, and voluntarily. *Id.* at 242, 89 S.Ct. at 1712–13; *McCarthy v. United States,* 394 U.S. 459, 466, 89 S.Ct. 1166, 1171 (1969). To be "voluntary," a guilty plea must be the expression of the defendant's own free will and must not be induced by threats, misrepresentations, or improper promises. *Brady v. United States,* 397 U.S. 742, 755, 90 S.Ct. 1463, 1472 (1970). The Texas Court of Criminal Appeals has noted "that *Boykin* did not specifically set out what must be 'spread on the record' to comply with [its] mandate." *Davidson v. State,* 405 S.W.3d 682, 687

(Tex.Crim.App.2013). "So long as the record *otherwise* affirmatively discloses that the defendant's guilty plea was adequately informed, due process is satisfied." *Id.*

Appellant submits that we should scrutinize the record "to determine whether [he] had been properly informed of his rights even though he plead guilty to the jury" as the court of criminal appeals did in *Gardner v. State,* 164 S.W.3d 393 (Tex.Crim.App.2005). In *Gardner,* the defendant pleaded guilty before a jury to five separate offenses of aggravated sexual assault, but did not receive proper admonishments at the time of the plea. *Id.* at 394. The defendant's counsel "referred to [the defendant's] guilty plea several times during the punishment phase" and stressed to the jury throughout various parts of the trial that the defendant had taken responsibility for the offense. *Id.* at 395–97. The jury assessed punishment at confinement for thirty-five years for each offense. *Id.* at 397. The defendant, citing *Boykin,* complained on appeal that he did not receive the proper admonishments. *Id.* The court of criminal appeals, held, however, that the record showed,

> **\*4** [The defendant] understood that he was waiving [his constitutional] rights when he pled guilty. This may be inferred, in part, from [defendant's] counsel's statements during the punishment phase mentioning that [defendant] would testify even though he did not have to under the Fifth Amendment and that [defendant's] guilty plea saved the victim from having to testify and saved the jury from the "grueling experience" of determining [defendant's] guilt.

> The voluntary nature of [defendant's] guilty plea is further shown in the record by the overwhelming evidence that [defendant's] guilty plea was part of a strategy (which we may also infer was done in consultation with competent counsel) to persuade the jury to grant [defendant] probation. Unlike this case, the record in *Boykin* was silent on whether the defendant's guilty plea was part of some trial strategy.

*Id.* at 399 (citations omitted). Appellant argues that *Gardner* "is distinguishable" from the instant case because, there, the trial court "did engage in some admonishment that was recorded in the transcript," unlike here.

More importantly, here, as in *Gardner,* the voluntary nature of appellant's guilty plea is shown by the evidence that his plea was part of a trial strategy intended to persuade the jury to grant him community supervision. During his plea hearing, appellant testified that he chose to plead guilty to give a jury an opportunity to assess community supervision as a punishment. At voir dire, the point of the opening statement of appellant's trial counsel was to extensively focus on the issue of punishment and the possibility that the jury could place him on community supervision. Counsel reminded the jury that appellant had pleaded guilty and it was only there to determine an appropriate sentence. Counsel further emphasized that appellant had pleaded guilty when he said, "There is an incredible 800–pound gorilla sitting at the end of the table, so to speak; and that [appellant] has pled guilty to aggravated robbery with a deadly weapon." Unlike in *Boykin,* the record here is not silent regarding the trial strategy behind appellant's guilty plea. *See Boykin,* 396 U.S. at 240, 89 S.Ct. at 1709 ("Trial strategy may of course make a plea of guilty seem the desirable course. But the record is wholly silent on that point and throws no light on it.").

Moreover, during the punishment phase of trial, when appellant was asked if he understood that he had a right to remain silent, he answered affirmatively. He also stated from the witness stand that he pleaded guilty because he was guilty and that "[i]f you did make that mistake ... you have to own up to it and take responsibility for it."

Finally, during closing argument, appellant's counsel said, "[Appellant] pled guilty to it in front of you-all. He accepted and said: I'm putting my faith and my trust in 12 fellow citizens of this county, and I'm owning up to what I did." Trial counsel further emphasized that appellant did not argue about his guilt, point the finger at someone else, or assert that someone else made him do it. And he noted that appellant "got on [the] witness stand, admitted it all to you, and ... apologized to the complainant."

As in *Gardner,* the record reveals appellant's trial strategy of seeking community supervision and demonstrates that he understood the consequences of his plea when he entered it even though he had not been expressly informed of those consequences at the time. *See Gardner,* 164 S.W.3d at 399; *see also Vasquez v. State,* 522 S.W.2d 910, 912 (Tex.Crim.App.1975) (stating "failure to give [admonishments regarding right to confront witnesses or right against self-incrimination] does not invalidate a plea of guilty otherwise freely and voluntarily made"). Although the trial court did not specifically admonish appellant on each of his constitutional rights at the time he entered his plea, we hold that the record demonstrates that he was otherwise aware of his rights and entered his guilty plea voluntarily and

knowingly. *See Davison,* 405 S.W.3d at 687 (explaining "it is not enough that the record is unrevealing with respect to whether [the defendant] was admonished by the trial court; the record must also be silent with respect to whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent").

**\*5** We overrule appellant's second issue.

### Conditions of Community Supervision

In his third issue, appellant argues the trial court erred in including "only nine basic potential conditions of community supervision" in the jury charge because this created a "harmful and misleading impression of the definition of community supervision in the minds of the jury." Appellant asserts that "[b]y only including a few of the less-restrictive conditions of community supervision, the jury charge deviated from the statutory language and misled the jury into believing that community supervision is much less onerous than in reality." The State responds that the trial court properly defined community supervision in the charge and it was not required to list all twenty-four statutory conditions of community supervision. *See* TEX.CODE CRIM. PROC. ANN. art. 42.12, § (2)(2)(B) (Vernon Supp.2014).

The trial court instructed the jury that community supervision is:

> [T]he placement of a defendant by a court under a continuum of programs and sanctions, with conditions imposed by the Court for a specified period during which a sentence of imprisonment or confinement, imprisonment and fine, or confinement and fine, is probated and the imposition of sentence is suspended in whole or in part.

This definition tracks the language of article 42.12. Directly after its definition of community supervision, but before it listed nine possible conditions of community supervision, the trial court noted that "if community supervision is recommended by the Jury, the Court may impose the following conditions, *among others,* with respect thereto." (Emphasis added).

Appellant asserts that the trial court's list of nine possible conditions of community supervision "constitute[ed] a significant part of the 'definition' of community supervision" and by "only informing the jury of a few minor conditions, it created a misleading instruction that was harmful to [appellant]." Appellant further asserts that the State emphasized the problem when it repeatedly referred to community supervision and the stated conditions as a "joke."

Here, the trial court provided the jury with the statutory definition of community supervision, listed some of the possible conditions of community supervision, and informed the jurors that additional conditions could be imposed. To the extent that appellant wanted more conditions included in its charge, the trial court was not required to submit all of the possible statutory conditions of community supervision in the jury charge on punishment. *See Yarbrough v. State,* 779 S.W.2d 844, 845 (Tex.Crim.App.1989); *Wade v. State,* 951 S.W.2d 886, 893 (Tex.App.—Waco 1997, pet. ref'd) ("[F]ailure to enumerate all of the terms and conditions [of community supervision] is not considered harmful to the accused or restrictive of the court's authority.").

Moreover, appellant has not directed us to any authority that requires a trial court to include conditions of community supervision in its punishment charge to a jury. *See* TEX.CODE CRIM. PROC. ANN. art 42.12, § 11(a) (stating "[t]he judge may impose any reasonable condition"). Indeed, a trial court ultimately determines what conditions to include and what to leave out in ordering community supervision. *See id.* (stating that "[t]he judge of the court ... shall determine the conditions of community supervision"). Accordingly, we hold that the trial court did not err in instructing the jury on community supervision. *See McNamara v. State,* 900 S.W.2d 466, 468 (Tex.App.—Fort Worth 1995, no pet.) (holding failure to enumerate conditions of probation in jury charge not harmful); *Saenz v. State,* 879 S.W.2d 301, 306 (Tex.App.—Corpus Christi 1994, no pet.) (stating trial court need not inform jury of any conditions of community supervision in jury charge); *Herrera v. State,* 848 S.W.2d 244, 248 (Tex.App.—San Antonio 1993, no pet.) (determining omission of conditions of community supervision from jury charge not fundamental error).

**\*6** We overrule appellant's third issue.

## Conclusion

We affirm the judgment of the trial court.

Footnotes

| | |
|---|---|
| 1 | *See* TEX. PENAL CODE ANN. § 29.03(a)(2) (Vernon 2011). |
| 2 | After appellant filed his brief, the State filed a motion to supplement the record. *See* TEX.R.APP. P. 34.6(d) (allowing any party to direct court reporter to file supplemental reporter's record). Although the Court notified appellant that a supplemental reporter's record had been filed, appellant has not supplemented or amended his brief in light of the supplemented record. |
| 3 | At the beginning of voir dire, the trial court asked appellant to stand. |

**End of Document**

© 2015 Thomson Reuters. No claim to original U.S. Government Works.