**Opinion filed November 16, 2023**



# In The

# Eleventh Court of Appeals

_____

## No. 11-22-00065-CR
_____

## CRESHAWN DUPRI HOWARD, Appellant

## V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 104th District Court**
**Taylor County, Texas**
**Trial Court Cause No. 22485-B**

## M E M O R A N D U M   O P I N I O N

Creshawn Dupri Howard entered an open plea of guilty to the offense of murder. *See* TEX. PENAL CODE ANN. § 19.02(c) (West Supp. 2023). The jury assessed his punishment at confinement for a term of forty-five years in the Institutional Division of the Texas Department of Criminal Justice (TDCJ), and the trial court sentenced Appellant accordingly. Appellant challenges his conviction in two issues. First, he argues that his right to due process was violated because the trial court "allowed [Appellant]'s guilty plea to be entered" without an affirmative showing that it was intelligently and voluntarily made and without a showing that

Appellant fully understood the consequences of his plea. Second, he argues that the trial court erred when it failed to comply with Article 26.13 of the Texas Code of Criminal Procedure prior to accepting his guilty plea. Appellant maintains that the trial court's actions were harmful and require us to vacate his conviction and remand this cause for a new trial. We disagree and affirm the judgment of the trial court.

*Factual and Procedural History*

Appellant murdered the victim, David Devora, on New Year's Eve in 2019, when he shot Devora through a door during an attempted robbery. Appellant and four others planned to rob Devora at his cousin's house to obtain money and bond a friend out of jail. One of Appellant's codefendants, Michael Wright-Collazo, testified during the punishment phase. Collazo testified that, although the robbers allegedly did not plan to kill anyone, they had picked up a shotgun prior to the robbery so that they could "scare everybody in there, and take everything and run out." Executing their plan, Collazo knocked on the front door, Appellant stood by the garage door, and another codefendant "crouched" near the front door. Collazo testified that "whenever [Devora] opened the door, they were supposed to . . . show the guns and run in there." Devora opened the front door but then attempted to shut it. Collazo testified that they struggled with Devora to push open the front door and enter the house, and in the ensuing struggle, Appellant discharged the shotgun through the front door. Devora died from the shotgun wound to his head. Collazo testified that he, Appellant, and the other codefendant fled to their vehicle and drove off. Detective Jeff Cowan of the Abilene Police Department investigated the shooting and apprehended the five individuals involved, including Appellant.

Dr. Jason D. Dunham conducted three competency evaluations of Appellant at the direction of the trial court. In 2020, Dr. Dunham conducted the first examination via teleconference. In his report, Dr. Dunham stated that he was unable

to conduct a standard and structured clinical interview given the difficulties in doing so via teleconference and based on Appellant's wishes to stop the meeting. Dr. Dunham concluded that the "data point[ed] in both directions"—that Appellant could be incompetent to stand trial or he could be malingering—and recommended the "very conservative and qualified opinion" that Appellant was not competent to stand trial at that time. On May 13, 2020, Appellant and the State waived the right to a jury trial on Appellant's "motion claiming incompetency," and the trial court received evidence as to Appellant's competency,[1] issued a judgment of incompetency, and ordered that Appellant be committed for purposes of attaining competency to stand trial. On April 23, 2021, Appellant filed a motion to reconsider the prior finding of incompetency because Appellant "appears to have regained trial competency." The trial court ordered another competency evaluation, and Dr. Dunham found Appellant competent to stand trial following this evaluation.

Four days after the case was preferentially set for trial for the following month, Appellant's trial counsel filed another motion suggesting incompetency. The trial court again ordered that Appellant be evaluated. Following this evaluation, Dr. Dunham concluded that Appellant was malingering and was competent to stand trial. At the hearing on that motion that followed on January 19, 2022, the trial court found Appellant competent to stand trial; neither party opposed the finding. Appellant's trial counsel then presented an oral motion for continuance requested by Appellant for "another 60 days"; trial counsel stated that he did not have "a legal justification, except that I understand where [Appellant] is coming from," and confirmed that he would be ready for trial by the trial date.

---

[1]The first competency evaluation was offered by Appellant's trial counsel at the hearing and admitted into evidence without objection.

However, trial counsel filed a motion to withdraw in February 2022. At the hearing, Appellant's trial counsel advised the trial court that, currently, the hearing was "[not] so much in support of getting a different lawyer" as much as it was a request to reconsider the continuance requested at the January 19 hearing. Appellant testified at the hearing on the motion to withdraw. Appellant now did not believe that he needed a new attorney. Instead, Appellant answered affirmatively when trial counsel asked whether the issues "that caused [Appellant] to be found incompetent the first time" had not been completely resolved, and whether Appellant hoped for more time to, "by some means, get right on" his medication to "improve [Appellant's] ability to assist [trial counsel] in preparing [Appellant] for trial[.]" On cross-examination, Appellant confirmed that he had lied to law enforcement during the investigation of the murder case and had previously committed multiple acts of giving false and fictitious information and evasion to avoid apprehension. After considering the evidence presented, including Appellant's testimony, the contents of the trial court's file, and the three prior expert reports by Dr. Dunham,[2] the trial court denied Appellant's motion for continuance.

The jury trial commenced on March 8, 2022. Prior to the State's reading of its two-count indictment, Appellant's trial counsel asked if Appellant would have the "opportunity to plead after each paragraph[.]"[3] Appellant did so, and, on the murder charge alleged in Count One, he pleaded "not guilty" to the first two paragraphs and pleaded "guilty" to the third, which alleged felony murder. *See*

---

[2]In the two reports that found Appellant competent, Dr. Dunham also found that Appellant did not require medication in order for him to maintain his current level of trial competence.

[3]For Count One, the State alleged in three paragraphs that Appellant committed murder as described in Section 19.02(b) of the Texas Penal Code. *See* PENAL § 19.02(b)(1)-(3). For Count Two, the State alleged that Appellant had committed aggravated robbery. *See* PENAL § 29.03(a).

PENAL § 19.02(b)(3). Following Appellant's guilty plea, Appellant's trial counsel confirmed Appellant's plea by saying "yes." Appellant's trial counsel did not suggest that Appellant was incompetent nor did he make an issue of Appellant's competency at the time of Appellant's plea. The trial court acknowledged and accepted Appellant's plea.[4]

Given the plea, the State waived the first two paragraphs of Count One and waived Count Two in the indictment, and trial proceeded to opening statements. During his opening statement, Appellant's trial counsel apologized to the State for the "surprise" and told the jury, "[the plea] makes this essentially a punishment proceeding. You'll still have to hear it and decide on the guilt-innocence issues, but it's not going to be contested by us." Appellant's trial counsel made no mention of any competency issues during the remainder of trial, and, when Appellant testified, he appeared to comprehend the State's and his trial counsel's questions and answered such questions clearly and logically.

*Analysis*

I. *Due Process*

In his first issue, Appellant argues that he was denied his constitutional due process rights under the Fifth, Sixth, and Fourteenth Amendments when the trial court accepted his guilty plea "without an affirmative showing on the record" that Appellant's plea was intelligently and voluntarily made and without a showing that Appellant fully understood the consequences of his plea.

"Federal due process requires that '[w]aivers of constitutional rights not only must be voluntary but must be knowing, intelligent acts done with sufficient

---

[4]At the time of the plea, the trial court "acknowledge[d] that the defendant entered a plea of guilty to the third paragraph." The trial court confirmed that it received and accepted the plea in its instructions to the jury.

awareness of the relevant circumstances and likely consequences.'" *Davison v. State*, 405 S.W.3d 682, 686 (Tex. Crim. App. 2013) (quoting *Brady v. United States*, 397 U.S. 742, 748 (1970)). In pleading guilty, a defendant relinquishes his Sixth Amendment rights to a jury trial and to confront witnesses against him, as well as his Fifth Amendment privilege against self-incrimination. *Id.* "For this waiver to be valid under the Due Process Clause, it must be 'an intentional relinquishment or abandonment of a known right or privilege.'" *Id.* (quoting *McCarthy v. United States*, 394 U.S. 459, 466 (1969)). A criminal defendant must have actual awareness of the charges against him and the privileges he necessarily relinquishes. *Id.*

The Fourteenth Amendment provides that no state may "deprive any person of life, liberty, or property, without due process of law." U.S. CONST. amend. XIV, § 1. Consistent with that guarantee, a guilty plea is valid only if it represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. *North Carolina v. Alford*, 400 U.S. 25, 31 (1970) (citing *Boykin v. Ala.*, 395 U.S. 238, 242 (1969)); *Brady v. U.S.*, 397 U.S. 742, 747 (1970); *see McCarthy v. U.S.*, 394 U.S. 459, 466 (1969).

*Boykin* requires that the record must affirmatively disclose that a defendant who pleaded guilty did so knowingly and voluntarily. 395 U.S. at 242; *Brady*, 397 U.S. at 747 n.4. However, "*Boykin* [does] not specifically set out what must be 'spread on the record' to comply with [its] mandate." *Gardner v. State*, 164 S.W.3d 393, 399 (Tex. Crim. App. 2005) (quoting *Aguirre-Mata v. State*, 125 S.W.3d 473, 475 (Tex. Crim. App. 2003)). In this regard, a failure to admonish a defendant does not necessarily amount to a due process violation. *Davison*, 405 S.W.3d at 687. To amount to a due process violation, "the record must also be silent with respect to whether he was *otherwise* provided, or nevertheless aware of, the requisite information to render his guilty plea voluntary and intelligent." *Id.*

6

In this case, the record is not silent regarding the requisite information needed to show Appellant's plea was voluntarily and intelligently made. Instead, as detailed below, the record is replete with evidence that Appellant was aware of, or otherwise provided with, information regarding his right to a jury trial, the right to confront witnesses against him, the right against self-incrimination, and the nature of the charges against him, including the range of punishment. We review each right in turn and the corresponding information found in the record that showed that Appellant was aware of and informed of his rights.

Appellant offered his plea of guilty in the presence of the jury. By pleading guilty in the jury's presence and electing for the jury to determine his punishment, Appellant exercised his right to a jury trial; in actually exercising this right, he was necessarily aware of it. *See Gaal v. State*, No. 02-08-00382-CR, 2011 WL 2754754, at *4 (Tex. App.—Fort Worth July 14, 2011, no pet.) (mem. op., not designated for publication) ("[A]ppellant must have been aware of his right to a jury trial since he exercised it when he announced his guilty plea in front of the jury and continued to exercise it, as to a determination of his punishment, after announcing the plea."); *Williams v. State*, 674 S.W.2d 315, 318 (Tex.Crim.App.1984) ("Clearly *any* plea before a jury has always been considered to be a jury trial."). Indeed, Appellant participated in the trial, personally and through his trial attorney. Similarly, Appellant exercised his right to confront the witnesses against him by cross-examining, through trial counsel, the State's witnesses. In this regard, Appellant concedes in his reply brief that "[t]he record shows that Appellant was represented by counsel and confronted his accusers."

Regarding Appellant's right against self-incrimination, although Appellant was not formally admonished at his plea, or before he testified, the trial court

provided to the venire panel, in the defendant's presence, an instructive explanation of Appellant's rights.

> In a criminal case, the defendant has the right to take the stand and testify on his own behalf, but the law further provides that if he does not do so, his failure shall not be taken as a circumstance against him. This decision is for the defendant with counsel from his attorney.

Appellant argues that we should not consider this because it was directed at the venire panel, and not Appellant; therefore, Appellant may not have understood or even paid attention. Though not an admonishment directed *solely* to Appellant, it was offered by the judge, in open court and in Appellant's presence prior to his plea. Additionally, Appellant's right against self-incrimination was addressed in open court not only by the trial court but also by the State's attorney, Appellant's attorney and indirectly by Appellant himself. For example, the following statements and exchanges occurred during voir dire in the presence of Appellant:

> [THE STATE]: We have to give the defendant the presumption of innocence. We have to hold the State to a burden of proof, which is proof beyond a reasonable doubt. And if the State doesn't overcome that burden of proof, then we have to say, "Hey, this person on the presumption of innocence alone, even if they didn't present any evidence whatsoever on their behalf, we find them not guilty," and that's our system.
>
> . . . .
>
> [DEFENSE COUNSEL]: If [Appellant] chooses not to testify, could you follow the law and not hold that against him?
>
> [VENIREPERSON]: I believe so, yes, sir.
>
> . . . .
>
> [DEFENSE COUNSEL]: All right. What do you think? Do you -- is it -- would you honor a defendant's right to remain silent and his choice to do so if that in fact is what he does?
>
> [VENIREPERSON]: Definitely.

Moreover, Appellant's own testimony indicated that he was aware of and waived this right. Appellant attempted to invoke his right against self-incrimination at the hearing on the motion for continuance by responding to one of the State's questions, "I plead the Fifth." At trial, the following exchange occurred:

> [DEFENSE COUNSEL]: I mean, where does it end? You can't -- you know you're doing prison time behind this, right?
>
> [APPELLANT]: Yes, sir.
>
> [DEFENSE COUNSEL]: You -- you knew when you pleaded guilty that you were signing up for prison, 5 to 99 years or life, whatever the jury said. You knew that when you pleaded guilty, didn't you?
>
> [APPELLANT]: Yes, sir.

Appellant points to nothing in the record that supports an argument that despite these statements, he was *in fact* unaware of his right against self-incrimination. As articulated in *Davison*, the record shows he was *otherwise* provided with the necessary information. 405 S.W.3d at 687.

The record also shows that Appellant was aware of the nature of the charges against him and their consequences. By pleading guilty to the third paragraph of the indictment, it appears that Appellant was aware of the difference between each paragraph and elected to plead to the one that alleged felony murder. Moreover, Appellant was present while the trial court, the State's attorney, and appellant's trial counsel all discussed the proper range of punishment prior to Appellant entering his plea. In Appellant's presence, the trial court defined the range of punishment for the venire panel by stating:

> In the case before you today, the defendant is charged in an indictment with two offenses. The first offense is the offense of murder. The second offense is the offense of aggravated [robbery]. The offense of murder is a first-degree felony that carries a range of punishment of not less than 5 years and not more than 99 years or life

in prison and up to a $10,000 fine. . . . [Aggravated robbery] is also a first-degree felony, which is punishable by not less than 5 years, not more than 99 years or life in prison, and up to a $10,000 fine.

During voir dire, the State informed the venire panel, in Appellant's presence of the proper range of punishment for murder and aggravated robbery, including the fine amount. Similarly, trial counsel told the venire panel that Appellant could be facing "99 years or life." As stated above, Appellant himself acknowledged that he understood the range of punishment at the time of the plea.

> [DEFENSE COUNSEL]: You -- you knew when you pleaded guilty that you were signing up for prison, 5 to 99 years or life, whatever the jury said. You knew that when you pleaded guilty, didn't you?
>
> [APPELLANT]: Yes, sir.

The proper range of punishment was disclosed in Appellant's presence no fewer than six times.[5] Further, Appellant, by his own admission, was *actually* aware of the range of punishment he faced.

We may also infer Appellant's plea was voluntary from evidence that his guilty plea was part of a trial strategy. *See Boykin*, 395 U.S. at 240; *Gardner*, 164 S.W.3d at 399; *Abrego v. State*, 611 S.W.3d 139, 141 (Tex. App.—Houston [14th Dist.] 2020, no pet.); *Gaal*, 2011 WL 2754754, at *4 (citing *Gardner*, 164 S.W.3d at 399). Appellant unequivocally acknowledged his purpose and intent to voluntarily plead guilty to the charged offense.

> Q: Creshawn, first of all, yeah, why did you plead guilty to murder?

---

[5]Including the statements above, Appellant was informed of the range of punishment twice when the trial court read its charge to the jury. Appellant's trial counsel further stated that a "sufficient term" for Appellant would be twenty years of imprisonment, and he reminded him that he would be facing "10, 20, 25, years" during Appellant's testimony.

A:  Because I felt like it was right and I felt like I owed that to his family.

Throughout Appellant's testimony, he acknowledged his actions and expressed his remorse for taking Devora's life.  Defense counsel asked the jury to consider defendant's remorse when determining Appellant's sentence, calling him "salvageable."  The record supports the inference that Appellant's guilty plea (which, by his audible comment of "yes" following Appellant's announcement, we may also infer was done in consultation with competent counsel) was a knowing and voluntary acknowledgement of his culpability to persuade the jury to assess a lighter sentence.  *See Gardner*, 164 S.W.3d at 399.

This is not a silent record that might raise concerns of due process.  Although bereft of a formal admonishment of his constitutional rights, the record supports the conclusion that Appellant's plea was knowing and voluntary, which is confirmed by the discussion of his rights and potential punishment during voir dire, as well as Appellant's own testimony and the apparent trial strategy employed by Appellant's trial counsel.  Appellant did not plead "guilty" in ignorance of the factual assertions against him, the range of punishment he faced, his presumption of innocence,[6] his right against self-incrimination, his right to a jury trial, or the State's burden of proof.[7]  As to constitutional due process afforded to Appellant, the record adequately shows that Appellant freely, knowingly, and voluntarily pleaded guilty and gives us

---

[6]The trial court instructed the venire panel during voir dire, in Appellant's presence, regarding the presumption of innocence and the State's burden to prove its case beyond a reasonable doubt: "[Appellant] in this case is presumed to be innocent unless his guilt is established beyond a reasonable doubt by evidence and testimony admitted under the rulings of the Court."  The State's attorney and Appellant's trial counsel also discussed the presumption of innocence in favor of Appellant and the State's burden of proof with members of the venire panel in Appellant's presence.

[7]The State's burden of proof was reiterated, in Appellant's presence, no less than eight times to the venire panel.

fair assurance that he understood the consequences of his guilty plea. We overrule Appellant's first issue.

II. *Article 26.13*

In his second issue, Appellant argues that the trial court failed to admonish Appellant pursuant to Article 26.13(a)(1)–(6) and did not comply with Article 26.13(b) of the Texas Code of Criminal Procedure.

Article 26.13(a) of the Texas Code of Criminal Procedure provides that, prior to accepting a guilty plea or a plea of nolo contendere, the trial court must provide the defendant with the following admonishments:

(1) the range of punishment;

(2) the fact that any sentencing recommendation made by the State is not binding on the trial court;

(3) the fact that, if the punishment assessed does not exceed the recommendation made by the State as agreed to by the defendant and his or her attorney, the defendant may only appeal with the trial court's permission "except for those matters raised by written motion filed prior to trial";

(4) the fact that immigration consequences may result if the defendant is not a citizen of the United States;

(5) the fact that the defendant will need to meet the registration requirements of Chapter 62 if he or she is convicted of or placed on deferred adjudication for an offense that requires registration as a sexual offender; and

(6) the fact that, if the defendant is placed on community supervision and satisfactorily fulfills its conditions, the court is authorized, on the expiration of the community supervision period, to exercise judicial clemency pursuant to Article 42A.701(f) of the Texas Code of Criminal Procedure.

TEX. CODE CRIM PROC. ANN art. 26.13(a) (West Supp. 2022); *Shoemaker v. State*, No. 11-15-00107-CR, 2017 WL 1957636, at *2 (Tex. App.—Eastland May 11, 2017, no pet.) (mem. op., not designated for publication). Article 26.13(b) states that a trial court cannot accept a plea of guilty or plea of nolo contendere "unless it appears that the defendant is mentally competent and the plea is free and voluntary." CRIM. PROC. art. 26.13(b). "A person is incompetent to stand trial if the person does not have: (1) sufficient present ability to consult with the person's lawyer with a reasonable degree of rational understanding, or (2) a rational as well as factual understanding of the proceedings against the person." CRIM. PROC. art. 46B.003(a) (West 2018).

A trial court's failure to admonish a defendant under Article 26.13 is non-constitutional error that may be raised for the first time on appeal unless it is expressly waived. *Loch v. State*, 621 S.W.3d 279, 281 (Tex. Crim. App. 2021); *Bessey v. State*, 239 S.W.3d 809, 812 (Tex. Crim. App. 2007). Accordingly, we disregard such error if it does not affect Appellant's substantial rights. TEX. R. APP. P. 44.2(b). In determining whether the error affected Appellant's substantial rights, we examine the entire record for indications as to whether Appellant was aware of the consequences of his plea of guilty prior to the trial court's acceptance of his plea and whether he was misled or harmed by the trial court's failure to properly admonish him. *See Davison*, 405 S.W.3d at 688–89; *VanNortrick v. State*, 227 S.W.3d 706, 709 (Tex. Crim. App. 2007); *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006); *Burnett v. State*, 88 S.W.3d 633, 638 (Tex. Crim App. 2002). In this regard, facts in the record, even facts that occur after the defendant pleads guilty, may raise the inference that, at the time of his guilty plea, the defendant was actually aware of the consequences of his plea. *Davison*, 405 S.W.3d at 689; *Burnett*, 88 S.W.3d at 640–41.

13

A trial court's error is not harmful if we have a fair assurance that the defendant's decision to plead guilty would not have changed had the trial court admonished him. *VanNortrick*, 227 S.W.3d at 709. For example, if the record shows that the defendant was made aware of the range of punishment by means other than a formal admonishment of same, the trial court's failure to admonish the defendant under Article 26.13(a)(1) does not affect the defendant's substantial rights. *See, e.g.*, *Burnett*, 88 S.W.3d at 639, 641 (no harm under Article 26.13(a)(1) where the record contained the phrases "life sentence," "life in prison," and "five–to–99 or life" approximately forty-five times, and there was no evidence appellant was unaware of the consequences of his plea); *Duncan v. State*, 6 S.W.3d 794, 795–96 (Tex. App.—Houston [1st Dist.] 1999, pet. ref'd) (no harm under Article 26.13(a)(1) where defendant filed a motion mentioning the appropriate range, and the trial court stated the proper range in the defendant's presence). Similarly, the trial court's failure to admonish a defendant of a particular consequence of a plea is harmless if that consequence does not apply to the defendant. *See Bessey*, 239 S.W.3d at 813–14; *Anderson v. State*, 182 S.W.3d 914, 919 (Tex. Crim. App. 2006); *Slaughter v. State*, No. 02-07-00050-CR, 2007 WL 3120688, at *6 (Tex. App.—Fort Worth Oct. 25, 2007, no pet.) (mem. op., not designated for publication).

In this case, the trial court erred when it failed to admonish Appellant as required by Article 26.13(a).[8] *See Davison*, 405 S.W.3d at 687–88; *Burnett*, 88 S.W.3d at 636–37. However, any harm caused by the trial court's error did not affect Appellant's substantial rights. As stated above, Appellant was made aware of the range of punishment before he pleaded guilty, and Appellant confirmed—through

---

[8]The State concedes that the trial court failed to admonish Appellant under Section 26.13 and only briefs harm on this issue.

his own testimony—his understanding of the range of punishment when he pleaded guilty. Because we have fair assurance that Appellant's plea would not have changed had he been properly admonished of the range of punishment by the trial court, we conclude that the trial court's error in failing to admonish him under Article 26.13(a)(1) did not harm Appellant.

Nor was Appellant harmed by the trial court's failure to admonish him under Article 26.13(a)(4). Where the record shows that a defendant is a United States citizen, the trial court's failure to admonish him on the possible immigration consequences that could result from his plea constitutes harmless error. *VanNortrick*, 227 S.W.3d at 709. We may also draw reasonable inferences from facts in the record to determine whether Appellant is a United States citizen. *Taylor v. State*, No. 11-21-00256-CR, 2022 WL 17346072, at *2 (Tex. App.—Eastland Dec. 1, 2022, no pet.) (mem. op., not designated for publication) (citing *Fakeye v. State*, 227 S.W.3d 714, 716 (Tex. Crim. App. 2007)).

As an initial matter, Appellant does not contend that he would have changed his plea had the trial court given him the admonishment in Article 26.13(a)(4), nor does Appellant assert that he is not a United States citizen or claim that he has suffered any adverse immigration consequences because of his plea. Appellant merely asserts that the trial court committed reversible error in failing to admonish Appellant under "Article 26.13 a 1 through 6 [sic], inclusive" and requests this court to vacate the trial court's judgment and remand the case for a new trial.

Direct evidence of citizenship is not present in this record, but we can reasonably infer Appellant's citizenship from the evidence. Appellant's older sister testified, and the sealed record confirms, that Appellant was born in Abilene, Texas. Appellant's mother testified that she was "legal" and "a good citizen." Appellant's grandfather served on the school board in Abilene where Appellant attended public

15

school. From these facts we may reasonably infer that Appellant is a United States citizen. Because Appellant is a United States Citizen, we have a fair assurance that Appellant's plea would not have changed had the trial court admonished him under Article 26.13(a)(4), and any error by the trial court in failing to admonish Appellant under this subsection was harmless.

The remaining subsections of Article 26.13(a) are similarly inapplicable. Appellant did not plea pursuant to a plea bargain, and the State did not provide a punishment recommendation—nor did Appellant or his attorney agree to any punishment recommendation—as contemplated by subsections (a)(2) and (a)(3). *See* CRIM. PROC. art. 26.13(a)(2)-(3). Appellant was not convicted of an offense that requires sex offender registration. *See id.* art. 26.13(a)(5). Further, Appellant was ineligible for community supervision. *See id.* art. 26.13(a)(6); *see also id.* arts. 42A.054, 42A.056. Because subsections (a)(2)–(a)(6) are inapplicable to Appellant, the trial court's failure to admonish him under these subsections did not affect his substantial rights. *Anderson*, 182 S.W.3d at 919. Moreover, a trial court's failure to comply with subsection (a)(5) or (a)(6) "is not a ground for the defendant to set aside the conviction, sentence, or plea." CRIM. PROC. art. 26.13(h), (h-1). The trial court's error in failing to admonish Appellant pursuant to Article 26.13(a) did not affect Appellant's substantial rights; therefore, such error was harmless and must be disregarded. *See* TEX. R. APP. P. 44.2(b).

The trial court did not commit error under Article 26.13(b). Article 26.13(b) states that no plea of guilty "shall be accepted by the trial court unless it appears that the defendant is mentally competent and the plea is free and voluntary." CRIM. PROC. art. 26.13(b). We concluded in addressing Appellant's first issue that his plea was free and voluntary. And unless an issue is made of a defendant's present mental competency at the time of the plea, the trial court need not make an inquiry or hear

16

evidence on such issue, and it is not error to accept the guilty plea. *See Kuyava v. State*, 538 S.W.2d 627, 628 (Tex. Crim. App. 1976); *Fluellen v. State*, 443 S.W3d 365, 369 (Tex. App.—Texarkana 2014, no pet.); *Shoemaker*, 2017 WL 1957636, at *2.

At the time of Appellant's guilty plea, Appellant's trial counsel did not suggest incompetency nor make an issue of Appellant's competency. Moreover, trial counsel made no mention of or suggested that any competency issues existed during the remainder of trial. The trial court observed Appellant when he pleaded guilty, throughout the pretrial proceedings, and throughout trial, including during Appellant's testimony. When Appellant testified, his answers were articulate and responsive. *See Stone v. State*, 638 S.W.2d 629, 632 (Tex. App.—Houston [1st Dist.] 1982, pet. ref'd) (clear and lucid testimony of appellant is evidence of competency). In its judgment, the trial court confirmed that it appeared that Appellant was mentally competent to stand trial, made the plea freely and voluntarily, and was aware of the consequences of his plea. Based on our review of the record as a whole, we conclude that the trial court did not err under 26.13(b) when it accepted Appellant's guilty plea.[9] *See Hall v. State*, 935 S.W.2d 852, 855–

---

[9]We note that, to support his argument, Appellant cites to evidence from the motion-to-withdraw hearing wherein Appellant requested a continuance. The testimony, evidence, and arguments at the hearing do not suggest that at the time of the proceedings, Appellant lacked either a rational, factual understanding of the proceedings or a sufficient ability to consult with his lawyer with a reasonable degree of rational understanding. *See* CRIM. PROC. art. 46B.003(a). Moreover, we look to any suggestion of incompetency *at the time of Appellant's plea* and, as we have said, no mention was made of any competency issues at the time of his plea, and a review of his own testimony reveals lucid and cogent answers and supports the trial court's determination that Appellant was competent to stand trial.

We further note that the trial court appropriately addressed the issues raised by Appellant's trial counsel on the issue of competency throughout the proceedings, allowing ample opportunity for the parties to submit any motions, requests, and evidence, and ordered that Appellant be evaluated by an expert each time the issue was raised even after a finding that Appellant was competent to stand trial on a preferential setting, carefully considering the evidence before it during the proceedings.

56 (Tex. App.—San Antonio 1996, no pet.) (trial court did not err where no issue of competency was raised at the time of the plea, the trial court had an opportunity to observe the defendant, and the punishment charge and judgment stated that the defendant appeared mentally competent).

In conclusion, the trial court committed non-reversible error by failing to admonish Appellant pursuant to Article 26.13(a) but such error was harmless. The trial court did not err under Article 26.13(b) when it accepted Appellant's guilty plea. We overrule Appellant's second issue.

## *This Court's Ruling*

We affirm the judgment of the trial court.

W. BRUCE WILLIAMS

JUSTICE

November 16, 2023

Do not publish. *See* TEX. R. APP. P. 47.2(b).

Panel consists of: Bailey, C.J.,
Trotter, J., and Williams, J.